Eloisa **MENDOZA**, Individually and as Administratrix of the Estate of Jerry Mendoza, Deceased, and Emeterio Mendoza, Individually and Stephanie Carrion, Individually Appellants,

v.

**AMERICAN NATIONAL INSURANCE COMPANY, Appellee.**

No. 04–95–00564–CV.

Court of Appeals of Texas, San Antonio.

May 15, 1996.

Rehearing Overruled June 19, 1996.

Gail Borden Tennant, Jr., San Antonio, for appellants.

Michele Barber Chimene, Ruth Greenfield Malinas, Ball & Weed, P.C., San Antonio, for appellee.

Before RICKHOFF, HARDBERGER and DUNCAN, JJ.

## OPINION

RICKHOFF, Justice.

This appeal arises from a summary judgment granted in favor of appellee American National Insurance Company ("American National") in an action alleging Insurance Code and Deceptive Trade Practices Act ("DTPA") violations and intentional infliction of emotional distress claims. In six points of error, appellants contend the trial court erred in entering the judgment as a matter of law because: (1) Stephanie Carrion had standing as the beneficiary of the policy to assert Insurance Code and DTPA violations; (2) the Estate of Jerry Mendoza had standing under the Insurance Code to assert Insurance Code and DTPA violations; (3) material questions of fact were raised as to each element of the appellants' Insurance Code and DTPA claims; and (4) material questions of fact were raised as to each element of appellants' claims for intentional infliction of emotional distress. We affirm in part and reverse and remand in part.

## FACTS

Jerry Mendoza was the named insured under a $25,000 life insurance policy purchased from American National on August 1, 1991. The October premium, which was due on the first, was not paid. The policy provided for a thirty-one day grace period.

The summary judgment evidence revealed that on Friday, November 1, 1991, the last day to pay under the grace period, American National's agent and district manager, Leon Sitka, verbally agreed to extend the grace period to Monday, November 4, 1991. This agreement or representation by Sitka was contrary to the terms of the policy, which only authorized American National's president, vice-president or secretary to extend the time for payment of premiums.

Jerry Mendoza died in an automobile accident on November 3, 1991, and the premium was never paid.

This is the second summary judgment rendered in this case. This court previously affirmed the first summary judgment as to appellants' breach of contract, negligence and bad faith claims but reversed as to appellants' claims for Insurance Code and DTPA violations and intentional infliction of emotional distress.[1] This second summary judgment disposes of appellant's remaining claims and is a final judgment.

## ARGUMENTS ON APPEAL

In six points of error, appellants contend the trial court erred in entering the judgment as a matter of law because: (1) Stephanie Carrion had standing as the beneficiary of the policy to assert Insurance Code and DTPA violations; (2) the Estate of Jerry Mendoza had standing under the Insurance Code to assert Insurance Code and DTPA violations; (3) material questions of fact were raised as to each element of the appellants' Insurance Code and DTPA claims; and (4) material questions of fact were raised as to

---

1. *Mendoza v. American National Insurance Company*, No. 04–93–00759–CV (Tex.App.—San Antonio, May 25, 1994, no writ) (not designated for publication). The court held that the failure of appellants' claims for breach of contract, negligence and bad faith as a result of the policy lapse did not cause the remaining claims for Insurance Code and DTPA violations and intentional infliction of emotional distress to fail as a matter of law. Therefore, the judgment as to those claims was reversed and remanded to the trial court for further proceedings.

each element of appellants' claims for intentional infliction of emotional distress. We first address the standing issue.

## 1. Standing

In their first and third points of error, appellants contend both Stephanie Carrion, the widow of Jerry Mendoza, and Mendoza's mother, as representative of the Estate of Jerry Mendoza, had standing to assert the Insurance Code and DTPA violations. In its brief, appellee American National addresses these contentions but also argues that Eloisa and Emeterio Mendoza, Jerry Mendoza's parents, individually, lacked standing to assert these violations. The appellants did not challenge the summary judgment on the basis of the standing of Mendoza's parents in their individual capacities; therefore, we do not address this issue.

### a. Standing Requirements

■ The DTPA protects consumers; therefore, consumer status is an essential element of a DTPA cause of action. *Figueroa v. West,* 902 S.W.2d 701, 707 (Tex.App.—El Paso 1995, no writ). Whether a plaintiff is a consumer is generally a question of law to be determined by the trial court from the evidence. *HOW Insurance Co. v. Patriot Financial Servs. of Texas, Inc.,* 786 S.W.2d 533, 539 (Tex.App.—Austin 1990, writ denied), *disapproved on other grounds, Hines v. Hash,* 843 S.W.2d 464, 469–70 (Tex.1992). The trial court's conclusion will not be reversed unless it is erroneous as a matter of law. *Westech Eng'g, Inc. v. Clearwater Constructors, Inc.,* 835 S.W.2d 190, 196 (Tex. App.—Austin 1992, writ denied).

■ In order to qualify as a consumer under the DTPA, two requirements must be established. *Sherman Simon Enters., Inc. v. Lorac Service Corp.,* 724 S.W.2d 13, 14 (Tex. 1987). First, the person must seek or acquire goods or services by purchase or lease. *Id.* Second, the goods or services purchased or leased must form the basis of the complaint. *Id.* The absence of privity between the plaintiff and the defendant does not preclude the plaintiff from establishing standing as a consumer. *Flenniken v. Longview Bank and Trust Co.,* 661 S.W.2d 705, 707 (Tex.1983). A plaintiff's standing as a consumer is established by his relationship to the transaction, not by a contractual relationship with the defendant. *Id.*

■ Unlike the more restrictive standing requirement under the DTPA, section 16 of article 21.21 of the Insurance Code provides a cause of action to any person who has been injured by another's engaging in unfair or deceptive acts or practices in the business of insurance as declared in: (1) section 4 of article 21.21; (2) the rules or regulations issued under article 21.21; or (3) section 17.46 of the DTPA.[2] TEX.INS.CODE ANN. art. 21.21 (Vernon 1981); *see also Allstate Ins. Co. v. Watson,* 876 S.W.2d 145, 147 (Tex. 1994) (discussing types of practices actionable under article 21.21); *Aetna Casualty and Surety Co. v. Marshall,* 724 S.W.2d 770, 772 (Tex.1987) (distinguishing DTPA consumer status from injured party status). Therefore, a plaintiff may bring an action under article 21.21 of the Insurance Code for a violation of section 17.46 of the DTPA without being required to prove consumer status. *See Webb v. International Trucking Co.,* 909 S.W.2d 220, 224 (Tex.App.—San Antonio 1995, no writ). However, a plaintiff who is unable to show consumer status is limited to asserting violations of those subsections of section 17.46 that do not incorporate a consumer standing requirement in the language of the subsection. *See Webb v. International Trucking Co.,* 909 S.W.2d at 227–28 (permitting action under subsection 17.46(b)(12) but rejecting action under sections 17.46(b)(5), (14) & (23)).

### b. Carrion

■ As the named beneficiary of the policy, Carrion would clearly be injured as a

---

2. Section 16 of article 21.21 was amended in 1995 to delete the right to bring an action based on an act or practice declared to be unfair or deceptive in the rules or regulations adopted by the Board of Insurance under article 21.21. TEX. INS.CODE ANN. art. 21.21, § 16(a) (Vernon Supp. 1996). The right to bring an action declared to be unfair or deceptive under section 4 of article 21.21 or section 17.46(b) of the DTPA remains unchanged. TEX.INS.CODE ANN. art. 21.21, § 16(a) (Vernon Supp.1996).

result of Sitka's alleged misrepresentation. Therefore, Carrion has standing as an injured person to assert a cause of action under section 16 of article 21.21. *See Marshall,* 724 S.W.2d at 772 (distinguishing DTPA consumer status from Insurance Code injured person status). In her cause of action, Carrion could include claims alleging unfair or deceptive acts or practices as defined in section 4 of article 21.21 and the rules and regulations adopted thereunder. *See Watson,* 876 S.W.2d at 147. Carrion would also have standing under the Insurance Code to assert claims alleging the deceptive acts enumerated in the subsections of section 17.46(b) of the DTPA that do not incorporate a consumer standing requirement. *See Webb,* 909 S.W.2d at 227–28. Therefore, the trial court erred in granting summary judgment with respect to Carrion on the basis that she lacked standing to assert the alleged violations of the Insurance Code and DTPA.[3]

### c. Estate of Jerry Mendoza

■ The standing of Mendoza's mother to assert DTPA claims as the representative of the estate is governed by this court's prior decision in *First National Bank of Kerrville v. Hackworth,* 673 S.W.2d 218, 221 (Tex. App.—San Antonio 1984, no writ) (en banc). In *Hackworth,* this court held that a cause of action under the DTPA does not survive because the statute does not provide for survival and recovery thereunder is punitive in nature. 673 S.W.2d at 220–21. This court further held a representative of an estate cannot recover in an action under the DTPA because the representative is not a "consumer."[4] 673 S.W.2d at 221. The same reason-

ing applied in evaluating the survivability of DTPA claims in *Hackworth* also applies to claims under the Insurance Code. *See Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 9 (Tex.1991) (noting treble damages under article 21.21 are punitive in nature). Therefore, following and extending the decision of this court in *Hackworth,* we hold Mendoza's mother as representative of the estate cannot recover for DTPA or Insurance Code claims because such claims did not survive Mendoza's death. Since the claims do not survive, Mendoza's mother as representative of the estate was not injured by the misrepresentation as required for standing under the Insurance Code.

### 2. DTPA and Insurance Code—Material Issues of Fact

■ In appellants' second and fourth points of error, appellants assert that both Carrion and the estate raised material questions of fact as to each element of the appellants' Insurance Code and DTPA claims. Having concluded that the estate lacked standing to assert violations of the DTPA and Insurance Code, appellants' fourth point of error, contending the estate raised material fact issues as to these claims, is overruled. We now turn to appellants' second point of error with respect to Carrion.

The standard for reviewing a motion for summary judgment has been clearly established. The movant for summary judgment is first required to disprove at least one of the essential elements of each of the plaintiff's causes of action in order to prevail on summary judgment. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991). This

---

**3.** We note that to the extent Carrion has alleged claims under those subsections of 17.46(b) that do incorporate a consumer standing requirement, Carrion may be able to show consumer status if the proceeds used to purchase the insurance policy were community funds or if she can show that her status as a named beneficiary creates a special relationship with the insurer distinct from a mere third party seeking policy proceeds. *See Watson,* 876 S.W.2d at 150 (noting absence of third party plaintiff's standing in unfair claim settlement case based on absence of contract, no payment of premium, no legal or special relationship); *see also Kennedy v. Sale,* 689 S.W.2d 890 (Tex.1985) (beneficiary of policy, who was also insured, acquired benefits of policy

and had standing although policy was purchased by hospital); *HOW Insurance Co.,* 786 S.W.2d at 539 (primary beneficiary of homeowner's warranty policy, who was also insured, had standing as a consumer although builder purchased policy).

**4.** Although we note the Fort Worth court has disagreed with this conclusion in *Thomes v. Porter,* 761 S.W.2d 592, 594 (Tex.App.—Fort Worth 1988, no writ), the Texas Supreme Court has not passed upon this point, reserving discussion of the survival of DTPA damages for another day. *Shell Oil Co. v. Chapman,* 682 S.W.2d 257, 259 (Tex.1984).

initial burden requires the movant to show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). In determining whether a material fact issue exists to preclude summary judgment, evidence favoring the non-movant is taken as true, and all reasonable inferences are indulged in favor of the non-movant. *Id.* Any doubt is resolved in favor of the non-movant. *Id.*

Carrion contends the summary judgment as to the DTPA and Insurance Code violations is inappropriate because the movants relied on the case of *Walker v. Federal Kemper Life Assurance Co.,* 828 S.W.2d 442 (Tex. App.—San Antonio 1992, writ denied), which held that post-termination statements by an agent are not actionable. Appellant contends Sitka's representations were made before the termination of the policy. Appellee counters that the alleged statement was post-termination, since the effective termination date was October 1, 1991, and the alleged misrepresentation was made after this date. Appellee also argues the summary judgment was proper because the alleged misrepresentation was contrary to the terms of the policy.

Appellee's second argument was rejected by the Texas Supreme Court in *Royal Globe Ins. Co. v. Bar Consultants, Inc.,* 577 S.W.2d 688, 693 (Tex.1979) and *Home Ins. Co. of N.Y. v. Roberts,* 129 Tex. 178, 100 S.W.2d 91 (1937). In *Roberts,* the Court stated:

> It is now well settled in Texas that a provision in an insurance policy that no condition or stipulation shall be waived except by written indorsement attached to the policy is ineffectual to prevent a parol waiver of such provisions and conditions by an authorized agent acting within the scope of his authority.

100 S.W.2d at 93. In *Royal Globe,* the Court reiterated this rule and further stated:

> We are not to be understood as holding that the statutory authority granted an agent under Article 21.02 authorizes that agent to misrepresent policy coverage and bind the company to terms contrary to those of the written policy; that question was decided by us in *International Securi-*

*ty Life Ins. Co. v. Finck,* supra [496 S.W.2d 544 (Tex.1973) ]. However, an insurance company that authorizes an agent to sell its policies may not escape liability for the misrepresentations made by that agent which violate Article 21.21 or Section 17.46 merely by establishing that the agent had no actual authority to make any such representation.... To require actual authority would emasculate both Article 21.21 and Section 17.46 and provide a violator with an easily manufactured defense. It would only be necessary for a corporate principal to deny that an agent had actual authority to perform an act, even though a reasonably prudent man, using diligence and discretion in view of the insurance company's conduct, would naturally suppose the agent possessed such authority. 577 S.W.2d at 693–94; *see also Celtic Life Ins. Co. v. Coats,* 885 S.W.2d 96, 101–02 (Tex.1994) (Phillips, C.J., concurring) (reaffirming holding in *Royal Globe* ).

In the instant case, American National recites a provision in the contract limiting the means by which the policy could be modified to extend the grace period and asserts the alleged misrepresentation was contrary to that policy provision. In *Roberts,* the court held that the existence of a contract provision which expressly prohibited the action taken by the agent was ineffectual to prevent a parol waiver in direct violation of the provision. 100 S.W.2d at 93. Similarly, the provision in the Mendoza policy which restricted the persons who could modify the policy was ineffectual to prevent a parol waiver of this provision. Since American National selected Sitka as its agent, as between American National and the appellants, it is fair to impose the risk that Sitka would exceed his instructions on American National. *See Royal Globe,* 577 S.W.2d at 694 (quoting *Standard Distributors v. FTC,* 211 F.2d 7, 15 (2d Cir. 1954) (Hand, J.)); *see also Celtic Life Ins. Co. v. Coats,* 885 S.W.2d at 99.

With respect to American National's reliance on the decision in *Walker,* appellants note that in this court's order denying the motion for rehearing filed in relation to the appeal of the first summary judgment, the court held that *Walker* did not apply because

Sitka's alleged statement was made during the grace period. *Mendoza v. American National Insurance Company,* No. 04–93–00759–CV (Tex.App.—San Antonio, July 29, 1994, no writ) (not designated for publication). Appellee counters that the statement was post-termination, since the effective termination date was October 1, 1991, and the representation was made after this date.

The summary judgment proof evidenced a misrepresentation by Sitka that the grace period would be extended an additional four days. Based on this alleged representation, coverage would not have terminated until the expiration of the grace period on November 4, 1991; however, coverage was actually terminated by Mendoza's death on November 3, 1991.[5] In any event, the alleged representation was made prior to the termination of coverage as extended by the alleged misrepresentation.[6]

### 3. Material Issues of Fact—Intentional Infliction of Emotional Distress

In order to prevail on a claim for intentional infliction of emotional distress, the plaintiff must prove each of the following elements: "(1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe." *Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex.1993); *Beiser v. Tomball Hospital Authority,* 902 S.W.2d 721, 725 (Tex.App.—Houston [1st Dist.] 1995, writ denied). American National's motion challenged the first and second elements of this tort claim. American National, therefore, had the burden to show that no genuine issue of material fact exists as to these elements and that it is entitled to judg-

ment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d at 548–49.

In order to be liable for intentional infliction of emotional distress, the conduct of the defendant must have been so outrageous in character and extreme in degree as to "go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Twyman,* 855 S.W.2d at 621. Appellant's claim is based on the investigation undertaken by American National to determine the cause of the accident, specifically whether Jerry Mendoza's accident was alcohol-related. American National's investigation was clearly intentional. American National asserts, however, that it had a right to conduct the investigation under the terms of the policy. However, the legal right to undertake the investigation would not preclude liability if the *manner* in which the investigation was conducted was outrageous. *Wornick Co. v. Casas,* 856 S.W.2d 732, 735 (Tex.1993).

Each of the appellants testified in their depositions that they were not personally contacted during the course of the investigation and only discovered the existence of the investigation months after Jerry Mendoza's death. Appellants' attorney admitted during oral argument that American National did not "threaten" that Jerry Mendoza's body would be exhumed or an autopsy done. Appellants' attorney stated the possibility of exhumation was actually suggested by him not by American National. Given the evidence presented in this case, we do not find the manner in which the investigation was conducted by American National to be outrageous.

### CONCLUSION

Appellants' first and second points of error are sustained. We find Carrion had standing

---

5. The "termination of coverage" provision provides that policy coverage terminates on the first to occur of: (1) the insured's death; (2) the insured's age 95; (3) expiration of the Grace Period during which the premium due is not paid; (4) written request for surrender and submission of this Policy for its Case Value; or (5) an Excess Policy Debt.

6. In its post-submission brief, appellee cites *State Farm Life Ins. Co. v. Beaston,* 907 S.W.2d 430 (Tex.1995) to further support its contention that

coverage under the policy lapsed on the due date of the unpaid premium. Appellee's reasoning was the basis for this court's first opinion affirming the summary judgment as to appellants' breach of contract claims; however, such reasoning does not extend to appellants' claim seeking to impose liability for Sitka's tortious misrepresentation. *See Celtic Life Ins. Co. v. Coats,* 885 S.W.2d at 101 (Phillips, C.J., concurring on rehearing).

as a consumer to raise the DTPA and Insurance Code claims and that a material issue of fact was presented as to such claims precluding summary judgment. Appellants' other points of error are overruled. The estate's representative does not have standing to assert the DTPA and Insurance Code claims, and the conclusion that the parents individually lacked standing to assert similar claims was not challenged on appeal. Appellee was properly granted a summary judgment with respect to appellants' claims for intentional infliction of emotional distress.