

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-10-00828-CV

**BUSINESS STAFFING, INC.**,
Appellant/Cross-Appellee

v.

Christina **VIESCA**, et al., Appellees/Cross-Appellants
and Belo Wiley d/b/a Wen-Be, and Wiley Lease Co. Ltd., Appellees

From the 81st Judicial District Court, Atascosa County, Texas
Trial Court No. 06-01-0869-CVA-A
Honorable Fred Shannon, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:       Karen Angelini, Justice
               Phylis J. Speedlin, Justice
               Rebecca Simmons, Justice

Delivered and Filed:  December 28, 2012

AFFIRMED IN PART, REVERSED IN PART, AND RENDERED

This appeal and cross-appeal arise from a lawsuit that was tried in two separate phases. Phase I involved the wrongful death and negligence claims brought by Christina Viesca and other relatives (collectively the Viescas) against Business Staffing, Inc. (BSI), and Belo Wiley d/b/a Wen-Be, and Wiley Lease Co., Ltd.[1]  The jury found in favor of the Viescas.  Almost a year later, Phase II was tried and consisted of (1) the Viescas' claims against BSI for breach of contract, fraud, and Deceptive Trade Practices Act (DTPA) violations, and (2) Wiley Lease Co.,

---

[1] The charge only included Wiley Lease Co., Ltd.

Ltd.'s cross-claims against BSI for breach of contract, fraud, and DTPA violations. The jury found in favor of the Viescas and Wiley Lease Co. The trial court rendered judgment following Phase II that disregarded the jury verdict from Phase I and awarded damages based on the jury verdict in Phase II. Cross-appellants, the Viescas, challenge the trial court's grant of judgment notwithstanding the jury's verdict (JNOV) from the first phase of the trial. BSI appeals the jury verdict from Phase II that was incorporated into the trial court's judgment. We affirm in part, reverse in part, and render the judgment accordingly.

## BACKGROUND

This case is factually and procedurally complex, with several parties asserting appellate points. Consequently, an extensive discussion of the facts is necessary to understand the issues in this case. We begin with an overview of the parties and the facts and then address BSI's issues followed by the Viescas' cross-points.

### A. The Parties

#### 1. BSI

BSI is a staff leasing company.[2] In exchange for a percentage of a client company's gross payroll, BSI supplies the company with employees, provides insurance to the employees, handles the client's employees' insurance claims, and manages the client's payroll. The client retains the responsibility for "the direction and control of assigned employees as necessary to conduct the client company's business." TEX. LAB. CODE ANN. § 91.032(b)(1) (West 2006). In 1994, BSI entered into an employee lease agreement with Wiley Lease Co. Under the terms of the lease agreement, Hector Viesca was an employee of BSI assigned to work for Wiley Lease Co. As will be discussed below, prior to trial in Phase I, the Viescas settled their claims with

---

[2] Staff leasing companies and their contracts are regulated under Chapter 91 of the Labor Code. *See* TEX. LAB. CODE ANN. ch. 91 (West 2006).

Wiley Lease Co. BSI was the non-settling defendant in Phase I. On appeal, BSI is the appellant and cross-appellee.

### 2. *Wiley Lease Co.*

William "Belo" Wiley is the principal owner and operator of Wiley Lease Co., which is in the business of servicing oil tanks including gauging tanks and vacuuming water from the tanks. Wiley Lease Co. entered into two staff leasing contracts with BSI; one in 1994 and one in 2004. In 2005, Hector Viesca signed an employment contract with BSI and was assigned to Wiley Lease Co., where he worked as a vacuum truck driver until his death in October 2005. In 2006, Hector Viesca's wife Christina and son Hector Jr. sued BSI, Belo Wiley d/b/a Wen-Be, and Wiley Lease Co. Wiley Lease Co. and Belo Wiley settled with the Viescas prior to the Phase I trial and brought cross-claims against BSI in Phase II, recovering $3,669,810 in damages as well as costs and attorneys' fees from BSI. On appeal, Wiley Lease Co. is an appellee.

### 3. *Viescas*

Hector Viesca, a vacuum truck driver, signed an employment contract with BSI that assigned him to work with Wiley Lease Co. Under the staff leasing contract, Wiley Lease Co. was Hector's operational employer and BSI was Hector's administrative employer. Hector died in an accident while working under Wiley Lease Co.'s direction. Hector's wife, Christina, their minor son Hector Jr., and Hector's parents were the plaintiffs in the underlying suit. Christina brought suit in her individual capacity as well as in her representative capacity as the administratrix of the estate of Hector Viesca and as next friend of Hector Viesca, Jr.

The Viescas' negligence claims against Wiley Lease Co. and BSI were tried in Phase I, and the jury returned a favorable verdict for the Viescas. All other claims, including the Viescas' breach of contract and DTPA claims against BSI, and Wiley Lease Co.'s cross-claims against

BSI, were tried in Phase II.  The trial court signed its final judgment after both phases of the trial concluded, granting a JNOV as to Phase I, and entering judgment on the verdict as to Phase II.  The Viescas appeal the trial court's JNOV rejecting the Phase I verdict, and are appellees in BSI's appeal of issues arising out of Phase II.

## B.  The Contracts

In 1994, a BSI sales agent made an unsolicited business stop at Wiley Lease Co.  The agent informed Belo about BSI's services, including BSI's workers' compensation insurance policy that would cover Wiley Lease Co. and its employees.[3]  Transglobal Insurance Company, a wholly-owned company of BSI, would underwrite the insurance policy.  Neither BSI nor Transglobal was an admitted Texas workers' compensation carrier.  Belo testified that he thought he was contracting with a company that used an insurance company admitted as a Texas insurer to provide subscription compensation *coverage*.  However, the 1994 Leasing Agreement provided that BSI would procure workers' compensation *benefits* but not subscription compensation.

In 2004, another BSI sales agent contacted Belo and informed him that it was time to execute a new lease contract on behalf of Wiley Lease Co.  Belo testified that in executing the contract, he relied on the representations from the sales agents and BSI's officers that the policy provided "real comp."  The 2004 lease contract stated that BSI would assume responsibility for "providing, at the sole discretion of [BSI], workers' compensation coverage and/or benefits."  Belo understood this to mean that he and the employees assigned to Wiley Lease Co. would have subscription compensation.

---

[3] For purposes of this opinion, we will refer to workers' compensation subscribed to under the Texas Workers' Compensation Act as "subscription compensation insurance."  *See* TEX. LAB. CODE ANN. ch. 91.

In 2005, Hector signed an employment contract with BSI and was assigned to Wiley Lease Co. as a vacuum truck driver. The employment contract provided that BSI "will provide workers' compensation benefits to EMPLOYEE."

## C. The Accident, Lawsuit, and Settlement Negotiations

Within a year of signing the employment contract, Hector died on the job after inhaling hydrogen sulfide while gauging an oil tank. Christina Viesca, her minor son, and Hector's parents sued BSI and Wiley Lease Co. for wrongful death and negligence. The Viescas later amended their claims against BSI to include fraud, breach of contract, and violations of the DTPA. Wiley Lease Co. filed a cross-action against BSI for fraud, breach of contract, and DTPA violations.

Prior to Phase I, BSI and the Viescas discussed settlement. BSI offered $995,000 in exchange for the Viescas' release of their claims against both BSI and Wiley Lease Co. The Viescas rejected the offer. Wiley Lease Co. also entered into settlement discussions with the Viescas. Wiley Lease Co. offered the Viescas a $150,000 cash payment and a two-thirds assignment of any future recovery Wiley Lease Co. might receive from BSI (in Phase II) in exchange for a release of the Viescas' claims against Wiley Lease Co. The Viescas accepted the offer and dismissed all of their claims against Belo Wiley and Wiley Lease Co.

## D. The Judgment

Although somewhat repetitive, understanding the jury findings in both phases is critical to the trial court's judgment and the resolution of this appeal. Prior to the trial on the merits, the trial court bifurcated the case into two separate phases.[4] Phase I involved the Viescas' negligence and wrongful death causes of action. The jury found BSI and Wiley Lease Co.

---

[4] The lawsuit was actually split into three separate phases, but this appeal stems from the judgment relating to the first two phases.

negligent, apportioned fault at 50% each, and awarded damages to the Viescas in the amount of $612,500. BSI filed a motion for judgment notwithstanding the verdict. The judge carried the motion until completion of the trial of Phase II. The resulting judgment specifically recites that BSI's motion for JNOV of the Phase I jury verdict was granted.

Phase II consisted of (1) the Viescas' claims against BSI for DTPA violations, breach of contract, and fraud; and (2) Wiley Lease Co.'s cross-claims against BSI for DTPA violations, breach of contract, and fraud. The jury found BSI had breached its contract with Hector and engaged in false, misleading, or deceptive acts. The jury also found that BSI had engaged in an unconscionable action or course of action as to Christina and Hector Jr. The jury awarded Christina Viesca and Hector Viesca, Jr. economic damages in the amount of $1,600,000 based on one or more of its findings that BSI breached its contract and violated the DTPA.[5] The jury also awarded additional damages based on BSI's knowing or intentional violations of the DTPA. The judgment awarded Christina and Hector Jr. additional damages of $4,800,000 exclusive of costs and attorneys' fees based on the DTPA violations.

The jury also found that BSI breached its contract with Wiley Lease Co.; engaged in false, misleading, or deceptive acts; and committed fraud. The jury awarded Wiley Lease Co. economic damages in the amount of $1,223,270 based on its findings of BSI's breach of contract and DTPA violations. The jury awarded Wiley Lease Co. additional amounts based on BSI's knowing or intentional conduct. The judgment awarded Wiley Lease Co. $3,669,810 based on BSI's DTPA violations.

---

[5] The term "Viesca," as used in the charge, appears to refer to Christina Viesca, individually and in her representative capacity as distinguished from Hector Viesca, deceased, who is also referred to in the charge.

**E.  The Appeal and Cross-Appeal**

BSI appeals the portion of the judgment based on the issues tried in the Phase II.  The Viescas cross-appeal the JNOV granted as to the jury verdict in Phase I.  We begin our review with BSI's points regarding the issues tried in Phase II.

**BSI'S APPEAL OF THE JUDGMENT ON PHASE II ISSUES**

BSI raises nine issues on appeal.  To simplify the opinion, BSI's errors have been regrouped into three general categories: legal sufficiency of the evidence; improper jury argument; and newly discovered evidence.

**A.  Legal Sufficiency of the Evidence**

BSI challenges the legal sufficiency of the evidence to support the following points: (1) Christina Viesca's standing as a consumer under the DTPA; (2) the award of economic and treble damages to Christina and Hector Jr.; (3) the jury's finding that BSI committed fraud against Hector Viesca; (4) the jury's finding that BSI committed fraud against Wiley Lease Co.; (5) the award of damages to Wiley Lease Co. for the cost and obligations of settlement with the Viescas; (6) the jury's finding that BSI breached its contract with Wiley Lease Co.; and (7) the award of damages representing the return of consideration paid to Wiley Lease Co.

*1.  Standard of Review*

In a legal sufficiency review, we view the evidence in the light most favorable to the trier of fact's findings and indulge every reasonable inference that supports them.  *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).  We will reverse a judgment on a legal sufficiency challenge if the record discloses

> (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules
> of law or of evidence from giving weight to the only evidence offered to prove a
> vital fact; (c) the evidence offered to prove a vital fact is no more than a mere

scintilla; [or] (d) the evidence establishes conclusively the opposite of the vital fact.

*Id.* at 810.

## B. The Viescas' Damages

### 1. *Christina Viesca's Status As a Consumer*

BSI contends there was no evidence that Christina Viesca was a consumer and therefore she cannot recover under the DTPA. The Viescas respond that BSI waived this argument because BSI failed to file a Rule 93 verified denial asserting lack of capacity. Alternatively, the Viescas argue that Christina was a consumer because she was a third-party beneficiary of the contract between BSI and Hector.

### 1. *Determining Consumer Status*

While posed as a legal sufficiency point by BSI, determination of consumer status under the DTPA implicates standing and is a question of law that we generally review de novo. *See Bohls v. Oakes*, 75 S.W.3d 473, 479 (Tex. App.—San Antonio 2002, pet. denied) (citing *Lukasik v. San Antonio Blue Haven Pools, Inc.*, 21 S.W.3d 394, 401 (Tex. App.—San Antonio 2000, no pet.)).

Only consumers have standing to maintain an action under the DTPA. *Kennedy v. Sale*, 689 S.W.2d 890, 893 (Tex. 1985); *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705, 706 (Tex. 1983); *Mendoza v. Am. Nat'l Ins. Co.*, 932 S.W.2d 605, 608 (Tex. App.—San Antonio 1996, no writ). Because a party's status as a consumer is an issue of standing, not capacity, BSI was not required to file a verified denial challenging Christina's status as a consumer.

The DTPA defines a "consumer" as "an individual . . . who seeks or acquires by purchase or lease, any goods or services." TEX. BUS. & COM. CODE ANN. § 17.45(10) (West 2011); *accord Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 172 (Tex. 1980). A consumer need not

be the actual purchaser or lessor of goods or services; a beneficiary of goods or services may be a consumer for purposes of the DTPA. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 815 (Tex. 1997). In determining consumer status, "our focus is on the plaintiff's relationship to the transaction." *Id.*; *accord Bohls*, 75 S.W.3d at 479. Consumer status may be extended to third parties in very limited situations, "as long as the transaction was specifically required by or intended to benefit the third party and the good or service was rendered to benefit the third party." *Lukasik*, 21 S.W.3d at 401; *accord Arthur Andersen*, 945 S.W.2d at 815. "The relevant inquiries to be made in determining consumer status are (1) to whom the representations were made; (2) who suffered damages from the representations; and (3) who was affected by the defendant's alleged misconduct." *Bohls*, 75 S.W.3d at 479; *accord NationsBank of Tex., N.A. v. Akin, Gump, Hauer & Feld, L.L.P.*, 979 S.W.2d 385, 392 (Tex. App.—Corpus Christi 1998, pet. denied).

Importantly, the question in this case is whether Christina was a consumer under the DTPA. With respect to insurance contracts, a "party whose only relation to an insurance policy is to seek policy proceeds is not a 'consumer.'" *Transp. Ins. Co. v. Faircloth*, 898 S.W.2d 269, 273–74 (Tex. 1995). However, an employee may be a consumer where his employer purchased an insurance policy because the employee acquired the services. *Kennedy v. Sale*, 689 S.W.2d 890, 893 (Tex. 1985).

Under *Kennedy*, Hector Viesca was a consumer for purposes of the DTPA. *See id.* However, Hector's DTPA claim did not survive his death. *See Lukasik*, 21 S.W.3d at 401; *First Nat'l Bank of Kerrville v. Hackworth*, 673 S.W.2d 218, 221 (Tex. App.—San Antonio 1984, no writ) (en banc). Therefore, Christina Viesca must establish her individual status as a consumer to prevail on a DTPA claim.

*3. Was Christina a Consumer?*

BSI contends that Christina was merely an incidental beneficiary of Hector's insurance policy with BSI, and therefore, she is not a consumer. The Viescas respond that Christina was a consumer under the tests this court adopted in *Lukasik* and *Bohls*. Specifically, the Viescas contend that because the "benefits policy" provided by BSI to Hector purported to provide "death benefits," these benefits were specifically intended to benefit Christina. Notably, there is no policy that names Christina; rather, Hector's employment contract stated that BSI will provide workers' compensation benefits to the employee.[6]

Under *Lukasik*, we cannot conclude that the workers' compensation benefits were specifically intended to benefit Christina and that the benefits were rendered to benefit her. *See Lukasik*, 21 S.W.3d at 401; *see also Arthur Andersen*, 945 S.W.2d at 815. In *Lukasik*, a couple who lived with their young children in a relative's home had a child who drowned in the relative's pool that did not have an alarm. The parents brought a DTPA cause of action against the pool company for failing to install a pool alarm. *Lukasik*, 21 S.W.3d at 398. We held that the parents were not consumers and noted that (1) they were not involved in discussions between the pool company and the homeowner regarding a pool alarm, (2) they never sought to acquire the alarm, (3) they never independently pursued acquisition of the pool alarm, and (4) the homeowner did not request that the pool alarm specifically benefit the deceased child or his parents. *Id.* at 402. Under those circumstances, the parents lacked consumer status because they did not have the requisite relationship to the transaction to prevail on a DTPA claim. *Id.*

In this case, there is no evidence that Christina Viesca was involved in discussions with BSI or that she sought to acquire BSI's services. Moreover, there is no evidence that Hector

---

[6] The jury charge did not contain a question on whether BSI engaged in false, misleading, or deceptive actions towards Christina as a consumer.

requested that BSI's services specifically benefit Christina Viesca. Accordingly, *Lukasik* does not support the Viescas' contention that Christina is a consumer. *See id.*

Likewise, our decision in *Bohls* does not support the Viescas' argument. There, a wife accompanied her husband when he negotiated the financing of a prospective home purchase with the defendant. *Bohls v. Oakes*, 75 S.W.3d 473, 475 (Tex. App.—San Antonio 2002, pet. denied). After problems arose with the construction and financing of their home, the husband and wife brought, and prevailed on, a DTPA claim against the lender. *Id.* at 476. On appeal, the lender argued that the wife was not a consumer because she was a stranger to the transaction. *Id.* at 478. We held that the wife was a consumer as "a third-party beneficiary of the transaction between [her husband] and [the lender] by virtue of her relationship to [her husband] and her intent to occupy the home after it was built." *Id.* at 479. Unlike in *Bohls*, there is no evidence of any representations made by BSI to Christina. *See id.*

Our decision in *Mendoza* also supports a finding that Christina is not a consumer for purposes of the DTPA. *See Mendoza v. Am. Nat'l Ins. Co.*, 932 S.W.2d 605, 609 n.3 (Tex. App.—San Antonio 1996, no writ). In *Mendoza*, we left open the possibility that a wife, as a *named* beneficiary in an insurance policy, could be a consumer under a DTPA claim "if the proceeds used to purchase the insurance policy were community funds or if she can show that her status as a named beneficiary creates a special relationship with the insurer distinct from a mere third party seeking policy proceeds." *Id.* Here, Christina was not a named beneficiary in the contract. Finally, there is no evidence Hector's employment contract created any special relationship between Christina and BSI other than Christina's status as a party seeking policy proceeds. *See id.*

Under the specific facts of this case, we hold that Christina Viesca was not a consumer for purposes of the DTPA. *See Bohls*, 75 S.W.3d at 475; *Lukasik*, 21 S.W.3d at 401; *Mendoza*, 932 S.W.2d at 609 n.3. Thus, the evidence was legally insufficient to support the judgment awarding DTPA economic and exemplary damages to Christina Viesca and Hector Viesca, Jr. However, our inquiry does not end here for determining the proper amount of damages to which the Viescas are entitled. We therefore turn to the jury's finding that BSI breached its contract to see if it will support the trial court's judgment.[7]

### 4. *Amount of Damages Awarded to the Viescas*

In Question No. 1 of the charge, the jury found that BSI failed to comply with its contract with Hector. In Question No. 2, the jury found that BSI violated the DTPA. Question No. 4 asked the jury what amount of damages "would fairly and reasonably compensate . . . [the] Viesca[s], for damages that resulted from the conduct found in your response to one or more of the preceding questions?" BSI does not challenge the sufficiency of the evidence to support the jury's finding that BSI breached the contract with Hector. As noted above, because Hector's DTPA claim was extinguished on his death, and Christina was not a consumer, she may not recover actual or exemplary damages under the DTPA. But the damages question was also predicated on the positive finding of breach of contract contained in Question No. 1. Consequently, we must determine if the affirmative answer to the breach of contract question will support the award of damages under Question No. 4. *See ACCI Forwarding, Inc. v. Gonzalez Warehouse P'ship*, 341 S.W.3d 58, 68 (Tex. App.—San Antonio 2011, no pet.).

---

[7] Christina Viesca was also suing BSI in her representative capacity as the Administratrix of the Estate of Hector Viesca.

### a. Damages Related to Breach of Contract

In response to Question No. 4 of the charge, the jury awarded the Viescas $1,600,000 as damages that "in reasonable probability would have been received had there been in effect for Hector a workers' compensation policy issued under the TWCA." This amount is not split into any components in the charge, but at trial, the Viescas argued that they would have received $995,000 in gross negligence damages and approximately $605,000 for future average weekly wage payments under a subscription workers' compensation policy.[8]

### b. Gross Negligence

Under the Texas Workers' Compensation Act (TWCA), an employer may be liable for additional damages attributable to its gross negligence to an employee. *See* TEX. LAB. CODE ANN. § 408.001(b). The Viescas claim that damages attributable to BSI's gross negligence form part of their breach of contract damages because under a subscription policy they would have recovered such damages. On appeal, all parties agree that $995,000 of the jury's award to the Viescas in Question No. 4 is based on BSI's alleged grossly negligent acts. BSI argues that the damages are unsupportable because there was no evidence of gross negligence. The Viescas contend that "BSI fixed the value of the gross negligence death claim when it offered to pay $995,000 to [the Viescas] in order to settle the claim." The evidence of a settlement was a string of e-mails reflecting, at best, a settlement offer for $995,000. Wiley Lease Co. and the Viescas take the position that these e-mails are sufficient evidence of gross negligence to support the award. We do not agree. There is no evidence that the settlement offer was for grossly negligent conduct. Further, the issue of gross negligence was not even submitted to the jury in Phase I, which dealt with the underlying negligence of the parties. Accordingly, there was no evidence to

---

[8] The parties do not dispute these are the components of the $1,600,000 damage award.

support $995,000 of the total $1,600,000 awarded to the Viescas under a breach of contract theory. *See City of Keller*, 168 S.W.3d at 827.

> c. Lump-Sum Payment

BSI also attacks the remaining $605,000 component of damages awarded for future average weekly wages. BSI argues that because the TWCA does not allow for lump-sum payment of benefits, the Viescas were not entitled to such a payment. *See* TEX. LAB. CODE ANN. § 408.183(b) (West 2006) ("An eligible spouse is entitled to receive death benefits for life or until remarriage."); *id.* § 408.181(d) (providing that generally, income benefits must be paid weekly, but "[a]n insurance carrier may pay death benefits through an annuity if the annuity agreement meets the terms and conditions for annuity agreements adopted by the commissioner by rule").

Pursuant to the 2004 Leasing Agreement, BSI has been paying workers' compensation benefits to Christina since Hector's death. However, there was evidence that BSI was behind in its payments to Christina. The Viescas' expert testified that in the four and one-half years between Hector's death and Phase I of the trial, BSI never sent the average weekly wage payments to Christina on time. The expert also testified that BSI was 40% short on its payments to Christina, and that the Viescas had been underpaid by over $82,000. The expert calculated the amount of weekly benefits Christina would be entitled to until her death. To ensure BSI would be compensated for any excess amounts on the lump sum if Christina were to die or remarry, the expert and the Viescas proposed that the lump sum would be paid to an annuity service (e.g., John Hancock).

BSI directs us to no case or authority that prohibits a lump-sum award as a component of a breach of contract damage award. Because BSI failed to provide subscription workers'

compensation, Christina was entitled to recover damages attributable to BSI's failure to provide timely and accurate payments. We hold there was sufficient evidence to support the award of a lump-sum payment as damages for future average weekly wages in this action.

Thus, because there was no evidence to support the award of $995,000 attributable to BSI's gross negligence, we reverse the portion of the trial court's judgment that awards the Viescas damages for $1,600,000 and render judgment that the Viescas take $605,000 as damages attributable to breach of contract. *See Cater v. United Servs. Auto. Ass'n*, 27 S.W.3d 81, 85 (Tex. App.—San Antonio 2000, pet. denied) (reversing the trial court's judgment and rendering judgment on damages as established by the evidence); *Illey v. Hatley*, 693 S.W.2d 506, 512–13 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.).

### 5. *Jury's Finding of Fraud*

Having reviewed the evidence supporting the breach of contract damages, we turn to the jury's fraud finding. In response to Question No. 7, the jury found that BSI committed fraud against Wiley Lease Co. and the Viescas. However, no damage question accompanied the fraud liability questions. BSI contends that the evidence was legally insufficient to support the jury's *award* of fraud damages to the Viescas or to Wiley Lease Co. Because (1) no damage question accompanied the fraud liability question and (2) the judgment did not award damages based on the jury's finding of fraud, we need not address this point of error.

### 6. *Recap of Damages Awarded to the Viescas*

In sum, we reverse the trial court's award of $1,600,000 in economic damages to the Viescas and render judgment that the Viescas take $605,000 (the amount of future average weekly wages) as damages attributable to breach of contract. Further, because Christina Viesca was not a consumer, we reverse the portion of the trial court's judgment awarding the Viescas

additional damages in the amount of $3,200,000 based on the jury's finding that BSI intentionally or knowingly violated the DTPA and render judgment that the Viescas take nothing on this DTPA claim.

## C. Wiley Lease Co.'s Damages

### 1. *Evidence to Support Wiley Lease Co.'s Damages*

BSI challenges the legal sufficiency of the evidence to support the jury's award of damages to Wiley Lease Co. The jury question for Wiley Lease Co.'s damages was predicated upon the jury's answer as to either Question No. 1, BSI's breach of contract, **or** Questions Nos. 2 and 3, BSI's violation of the DTPA. The jury found in favor of Wiley Lease Co. on both theories. The judgment reflected an award of damages to Wiley Lease Co. based on the jury's finding that BSI violated the DTPA. Additionally, BSI's DTPA violations served as the basis for awarding attorneys' fees to Wiley Lease Co. BSI does not challenge the legal sufficiency of the evidence to support the jury's findings regarding BSI's violations of the DTPA, i.e., the liability findings. Thus, we turn to the sufficiency of the evidence to support the amount of the DTPA damages.[9]

### 2. *Award of Damages to Wiley Lease Co. for the Cost and Obligations of Settlement*

Wiley Lease Co. settled with the Viescas before Phase I of the trial for $150,000 plus two-thirds of any amount Wiley Lease Co. could recover from BSI in the future. In return, the Viescas released Wiley Lease Co. from liability. Wiley Lease Co. argued at trial that its settlement with the Viescas was a direct result of the misrepresentations made by BSI about the staff leasing contracts and workers' compensation coverage. In other words, had BSI's agents and officers not violated the DTPA by misrepresenting the staff leasing contracts, Wiley Lease

---

[9] We need not address whether the evidence was legally sufficient to support the jury's finding that BSI breached its contract with Wiley Lease Co. because the award of damages relates to the DTPA violations.

Co. would not have had to defend himself against the Viescas' negligence cause of action. Consequently, the measure of damages under the DTPA should include the cost of settlement. The jury found in answer to Question No. 4.B. that the damages relating to the cost and obligations of settlement between Wiley Lease Co. and Viesca amounted to $1,030,000.

BSI contends there is legally insufficient evidence to support the award of damages for the cost and obligations of Wiley Lease Co.'s settlement with the Viescas solely because Wiley Lease Co. was not entitled to recovery under contribution or indemnity theories.[10]  BSI argues that a joint tortfeasor who settles with an injured party cannot seek contribution from a non-settling tortfeasor unless the joint tortfeasor obtains the release of the non-settling tortfeasor. Thus, according to BSI, Wiley Lease Co. is precluded from recovering damages for cost of settlement.

Contrary to BSI's position, Wiley Lease Co. is not seeking contribution or indemnity from BSI.  Rather, it is seeking cost of settlement as a component of its DTPA damages. *See Kish v. Van Note*, 692 S.W.2d 463, 466 (Tex. 1985) ("The DTPA . . . permit[s] the injured consumer to recover the greatest amount of actual damages alleged and factually established to have been caused by the deceptive practice, including related and reasonably necessary expenses.").  Notably, a plaintiff may bring a DTPA cause of action if a party makes misrepresentations about an indemnity obligation. *See Ken Petroleum Corp. v. Questor Drilling Corp.*, 24 S.W.3d 344, 357 (Tex. 2000); *First Title Co. of Waco v. Garrett*, 860 S.W.2d 74, 76 (Tex. 1993).  Wiley Lease Co. did not seek contribution from BSI as a joint tortfeasor, but rather calculated a component of its damages based on the cost of settlement that it would not have entered into had BSI not violated the DTPA.

---

[10] BSI does not attack the underlying amount attributable to the cost of settlement damages awarded to Wiley; rather, BSI complains that the general theories of contribution and indemnity preclude such a recovery.

BSI does not challenge the sufficiency of the jury finding that BSI engaged in false and misleading practices. *See* TEX. BUS. & COM. CODE ANN. § 17.46. There was evidence that the Leasing Agreements "confer[red] rights, remedies, or obligations which it d[id] not have or involve, or which are prohibited by law." *See id.* § 17.46(b)(12). Specifically, at trial Wiley Lease Co. testified that BSI's agents and officers explained that Wiley Lease Co. had "real" workers' compensation. The Labor Code precludes a negligence suit brought by an employee or his beneficiaries where the employee is covered by workers' compensation insurance coverage. *See* TEX. LAB. CODE ANN. § 408.001 (providing, however, the possibility of a suit based on the employer's gross negligence). But because the insurance provided was not subscription, the Viescas could proceed against Wiley Lease Co. based on negligence. We hold the cost of settlement was an appropriate component of damages under the DTPA.

Accordingly, we overrule BSI's point of error regarding the award of cost of settlement damages to Wiley Lease Co. *See Ken Petroleum*, 24 S.W.3d at 357; *Garrett*, 860 S.W.2d at 76.

*3. Award of Return of Consideration Paid to Wiley Lease Co.*

Wiley Lease Co. was awarded damages for excessive service fees paid to BSI under the 2004 Leasing Agreement is the amount of $171,270. BSI contends that there was no evidence of excessive service fees and that the jury's award allowed Wiley Lease Co. a double recovery for both service fees (i.e., a return of consideration) and actual damages (i.e., damages for breach of contract or DTPA violations).

Under the DTPA, damages are calculated as either out-of-pocket damages or benefit-of-the-bargain damages. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 817 (Tex. 1997). The injured party may elect "the damage theory that provides the greater recovery." *Id.*

Here, the jury award allowed a double recovery for Wiley Lease Co. It awarded $22,000 on Question No. 4.A. for attorneys' fees; BSI does not contest this amount. Question No. 4.B. addressed the "cost and obligations of the settlement between Wiley Lease Co. Lease and Christina and Hector Viesca . . . to the extent such settlement was reasonable and necessary to protect Wiley Lease Co. Lease under the circumstances." The jury awarded Wiley Lease Co. $1,030,000. Question No. 4.C. addressed "service fees paid by Wiley Lease Co. Lease to BSI to the extent you find them excessive as a result of the conduct about which you answered 'Yes.'" The jury awarded $171,270. At the charge conference, BSI objected to this question and argued that Wiley Lease Co. was not entitled to both consideration/services paid and damages that flow from the breach of contract or DTPA violations. Because Wiley Lease Co. was made whole by recovering for the cost and obligations of settling, we reverse the portion of the trial court's judgment that awards DTPA economic damages to Wiley Lease Co. and render judgment that Wiley Lease Co. take $1,052,000 ($1,030,000 + $22,000 = $1,052,000). Likewise, we reverse the portion of the trial court's judgment awarding additional damages to Wiley Lease Co. in the amount of $2,446,540 (2 x ($1,030,000 + $171,270 + $22,000) = $2,446,540) and render judgment that Wiley Lease Co. take $2,104,000 (2 x ($1,030,000 + $22,000) = $2,104,000). Having reviewed BSI's legal sufficiency points, we next consider BSI's remaining points.

## D. Improper Jury Argument

BSI contends the trial court erred in denying its motion for new trial because Wiley Lease Co.'s numerous improper jury arguments and repeated violations of an order in limine amounted to incurable error.

Generally, to prevail on an improper jury argument theory, the contestant has the burden of establishing:

> (1) an error (2) that was not invited or provoked, (3) that was preserved by the proper trial predicate, such as an objection, a motion to instruct, or a motion for mistrial, and (4) was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge.

*Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839–40 (Tex. 1979). To establish that jury argument resulted in one of the "rare instances" of incurable harm, the contestant must further establish:

> that the argument by its nature, degree, and extent constituted such error that an instruction from the court or retraction of the argument could not remove its effects. The test is the amount of harm from the argument: whether the argument, considered in its proper setting, was reasonably calculated to cause such prejudice to the opposing litigant that a withdrawal by counsel or an instruction by the court, or both, could not eliminate the probability that it resulted in an improper verdict.

*Living Ctrs. of Tex., Inc. v. Peñalver*, 256 S.W.3d 678, 680–81 (Tex. 2008) (per curiam) (citations omitted); *accord Reese*, 584 S.W.2d at 839–40.[11]

### 1. *Wiley Lease Co.'s Jury Arguments*

BSI contends that Wiley Lease Co.'s trial attorney improperly implied that BSI and its executives were embezzlers and improperly referred to BSI as a "so-called insurance company." BSI objected to these arguments at trial. Because the central issues in the case were fraud and deceptive practices, and because there was evidence in the record of BSI's fraud and deceit, the jury argument was not improper. *See Clark v. Bres*, 217 S.W.3d 501, 510 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (noting that trial counsel is allowed wide latitude to refer to the opposing party "as a liar, a cheat, a thief, and a fraud" when the central issue was one of deceit and there was evidence in the record of deceit). Moreover, BSI does not point to a single instance in the record where Wiley Lease Co.'s counsel directly referred to BSI or its executives

---

[11] Some of the recognized rare instances of incurable argument include appeals to racial prejudice, using inflammatory epithets such as "liar" or "fraud," *see Reese*, 584 S.W.2d at 840, and likening the other party to the Nazis carrying out Hitler's Action T4 (euthanizing the disabled) project, *see Peñalver*, 256 S.W.3d at 679.

as "liars," or "embezzlers." *Cf. Reese*, 584 S.W.2d at 840 ("[U]nsupported charge of perjury was incurable."). Even assuming *arguendo* that the jury argument was improper, we cannot conclude that these arguments by Wiley Lease Co.'s counsel were "not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge." *See id*. at 839.

### 2. *Violations of the Court's Order in Limine*

Wiley Lease Co.'s counsel also violated the court's order in limine several times. First, the order prohibited the parties from mentioning that the jury's findings in response to a particular jury question would result in a judgment favorable to any party. Wiley Lease Co.'s counsel argued to the jury that it was legally very important that the jury vote unanimously on the fraud question. As stated previously, no damage question accompanied the fraud liability question, and no damages were awarded to Wiley Lease Co. in the final judgment based on the jury's finding of fraud. Therefore, any jury argument regarding the jury's answer to the fraud question was harmless. *See Peñalver*, 256 S.W.3d at 680–81.

The order also forbade appellees from mentioning the absence of a party from the proceedings. During closing argument, Wiley Lease Co.'s counsel stated, "[BSI] won't even come to the courthouse." This violation is harmless because the defendant's absence from the courtroom was obvious to the jury and an instruction from the court or retraction by Wiley Lease Co.'s counsel could have removed its effects. *See id.*

The order also prohibited appellees from mentioning that a BSI employee had been the subject of an administrative proceeding. At trial, Wiley Lease Co.'s counsel played a video-recorded deposition of the BSI employee but failed to cut a portion of the deposition that mentioned an administrative proceeding. However, the video was stopped by Wiley Lease Co.'s counsel before the exact nature of the proceeding was discussed by the deposed witness. The

witness's testimony revealed only that he was no longer a licensed adjuster with the Texas Department of Insurance. When asked why he was no longer licensed, he began to state "I'm appeal—." At that point, Wiley Lease Co.'s counsel abruptly stopped the recording. This jury argument is likewise harmless because we cannot conclude that it probably caused the rendition of an improper verdict. *See id.*

Finally, BSI argues that Wiley Lease Co. committed incurable jury argument by violating the order in limine's prohibition against arguing that a failure to award damages to the Viescas would cause Christina financial hardship. Wiley Lease Co.'s counsel elicited testimony from Christina that she was the sole provider after Hector's death and needed money to get her trailer fixed and pay taxes. This argument does not amount to one of the rare instances of incurable jury argument. *See Reese*, 584 S.W.2d at 839–40. Specifically, we cannot conclude that the argument "was reasonably calculated to cause such prejudice to the opposing litigant that a withdrawal by counsel or an instruction by the court, or both, could not eliminate the probability that it resulted in an improper verdict." *See Peñalver*, 256 S.W.3d at 681.

**E.  Newly Discovered Evidence**

BSI contends that the trial court erred in denying its motion for new trial based on newly discovered evidence.

*1.  Standard of Review*

To obtain a new trial on the basis of newly discovered evidence, a party must establish

(1) the evidence has come to its knowledge since the trial, (2) its failure to discover the evidence sooner was not due to lack of diligence, (3) the evidence is not cumulative, and (4) the evidence is so material it would probably produce a different result if a new trial were granted.

*Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010). We review a denial of a new trial for an abuse of discretion. *Id.* Further, when reviewing a denial, "every reasonable

presumption is to be made in favor of the trial court's decision." *In re J.(B.B.)M.*, 955 S.W.2d 405, 408 (Tex. App.—San Antonio 1997, no pet.).

### 2.  *The Trial Court Did Not Err*

BSI claims that it learned after trial that Wiley Lease Co.'s trial counsel, Carl Kolb, made material misstatements in open court that he represented only Wiley Lease Co.; BSI contends that Kolb was representing the Viescas as well.  Nowhere in the record does Kolb assert that he only represented Wiley Lease Co.  Additionally, BSI was well aware of alignment between Wiley Lease Co. and the Viescas because they entered into a settlement agreement in 2008 by which the Viescas would receive two-thirds of any jury award attained by Wiley Lease Co. from BSI in Phase II.  BSI also claims that the attorney billings contained in the affidavit accompanying the Viescas' and Wiley Lease Co.'s Application for Attorneys' Fees demonstrates that Kolb had been retained by the Viescas.  These billing statements do not show that Kolb was retained by the Viescas; they merely show multiple conferences and meetings with Mr. Stone (the Viescas' trial attorney).  This evidence is not so material that it would probably produce a different result if a new trial were granted; accordingly, BSI is not entitled to a new trial.  *See Waffle House*, 313 S.W.3d at 813.

BSI also claims that after the trial, it discovered that Christina had initiated a lawsuit against decedent Hector to establish a parent-child relationship and to pay child support.  On appeal, BSI contends that the newly discovered evidence "demonstrates that Christina was never married—ceremonially or informally—to the decedent and therefore that she was never entitled to pursue her claims against BSI."  BSI fails to explain how a court order entered eighteen years earlier demonstrates the parties were never married or how it would have painted a different picture for the jury.  Moreover, there is no evidence BSI could not have found the evidence that

was made a matter of public record before the trial. Therefore, BSI has not met the requirements to establish it is entitled to a new trial. *See id.* Having reviewed Phase II of the trial, we turn to Phase I.

**CROSS-APPEAL OF THE JUDGMENT ON PHASE I ISSUES**

On appeal the Viescas, as cross-appellants, argue that the trial court erred in granting the JNOV on the Phase I verdict because (1) BSI exercised control over Hector Viesca and (2) the trial court improperly forced an election between wrongful death and survival damages and DTPA damages. BSI responds that the trial court's judgment is supported by the allocation of settlement credits as a result of the settlement between the Viescas and Wiley Lease Co. Additionally, BSI contends that as a matter of law it was entitled to a take nothing judgment regarding Phase I because (1) Viesca was a borrowed servant of Wiley Lease Co. at the time of the accident; (2) pursuant to the Staff Leasing Services Act, Wiley Lease Co. is responsible for the acts of Viesca; (3) BSI owed no duty to warn of obvious dangers of which Hector was aware; (4) Hector Viesca acted outside the scope of his employment; (5) BSI is entitled to an offset for benefits paid to Christina Viesca and Hector Viesca, Jr.; (6) the trial court erred by not submitting jury questions based on BSI's affirmative defense of the borrowed servant doctrine and the Texas Staff Leasing Services Act; (7) Christina Viesca failed to prove she was the surviving spouse of Hector; and (8) there was legally and factually insufficient evidence to establish Christina was qualified to act as administrator of Hector Viesca's estate.

The question of whether the trial court erred in granting a JNOV and refusing to award damages in accordance with the jury verdict is moot if the settlement credit to which BSI would be entitled is greater than the $612,000 the jury awarded in Phase I. Therefore, we will address the settlement credit issue first.

## A. Settlement Credits

"[A] prevailing party is entitled to only 'one satisfaction' for an injury." *First Title Co. of Waco v. Garrett*, 860 S.W.2d 74, 78 (Tex. 1993). "[I]f settling parties are partially responsible for such an injury, then as a matter of law the judgment should be reduced by the amount of any settlements so as to prevent double recovery by the prevailing plaintiff." *Id.* This reduction may be achieved through settlement credits, as provided by Chapter 33 of the Texas Civil Practice and Remedies Code. *See id.* at 78–79; TEX. CIV. PRAC. & REM. CODE ANN. § 33.002(a) (West 2008); *Drilex Sys., Inc. v. Flores*, 1 S.W.3d 112, 121 (Tex. 1999).

"If the claimant has settled with one or more persons, the court shall further reduce the amount of damages to be recovered by the claimant with respect to a cause of action by the sum of the dollar amounts of all settlements." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.012(b); *Utts v. Short*, 81 S.W.3d 822, 828 (Tex. 2002); *Drilex Sys., Inc.*, 1 S.W.3d at 121–22. The non-settling defendant has the burden of establishing the settlement credit amount—this can be accomplished by merely placing into the record the settlement agreement. *See Utts*, 81 S.W.3d at 828; *Garrett*, 860 S.W.2d at 79. Once the non-settling defendant meets his burden, "the burden shifts to the plaintiff to show that certain amounts should not be credited because of the settlement agreement's allocation [of awards]." *Utts*, 81 S.W.3d at 828.

Because BSI and Viesca were each partially responsible for negligently causing Hector Viesca's death, "the judgment should be reduced by the amount of any settlements so as to prevent double recovery by the [Viescas]." *See Garrett*, 860 S.W.2d at 78. BSI filed a written notice of settlement and a request for credit before the case was tried to the jury. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.012(d). The settlement agreement between the Viescas and Wiley Lease Co. was made a part of the record. Thus, BSI met its burden of establishing its right

to a settlement credit. *See Garrett*, 860 S.W.2d at 78. The Viescas did not establish what amount of the settlement award was allocated to the negligence and wrongful death causes of action. Accordingly, we will presume that BSI is entitled to a settlement credit for the entire amount of the settlement agreement. *See id.* The settlement agreement provided that the Viescas would release all claims against Wiley Lease Co. in exchange for a $150,000 cash payment and two-thirds of any recovery awarded to Wiley Lease Co. in its cross-claim against BSI. After our modification of the award to Wiley Lease Co., Wiley Lease Co. was awarded damages of $3,156,000. Thus, the Viescas are entitled to a total of $2,254,000 from Wiley Lease Co. under the settlement agreement. Because the amount of the settlement credit due BSI exceeds the jury's initial award of $612,500 in Phase I, the Viescas were not entitled to any additional recovery from BSI under Phase I. Therefore, the trial court did not err in granting the JNOV as to the Phase I verdict and rendering judgment that the Viescas take nothing from BSI in Phase I. *See Jones & Gonzalez, P.C. v. Trinh*, 340 S.W.3d 830, 836 (Tex. App.—San Antonio 2011, no pet.) ("A motion for JNOV should be granted if a legal principle precludes recovery.").

## B.  Remaining Points

Because the trial court properly granted JNOV on account of BSI's entitlement to settlement credits, we need not address the cross-appellants' other points of error or BSI's cross-points directed to Phase I.

### CONCLUSION

We affirm the portion of the trial court's judgment disregarding the jury findings in Phase I. As to Phase II, we act as follows.

We reverse the portion of the judgment awarding $1,600,000 as actual and DTPA damages to Christina Viesca and Hector Viesca, Jr. and render judgment that Christina Viesca and Hector Viesca, Jr. recover $605,000 from BSI.

We reverse the portion of the trial court's judgment awarding the Viescas additional damages in the amount of $3,200,000 based on the jury's finding that BSI intentionally or knowingly violated the DTPA and render judgment that the Viescas take nothing on this DTPA claim.

We reverse the portion of the judgment awarding economic damages to Wiley Lease Co. in the amount of $1,223,270 and render judgment that Wiley Lease Co. recover $1,052,000 from BSI.

We reverse the portion of the trial court's judgment awarding additional damages to Wiley Lease Co. in the amount of $2,446,540 and render judgment that Wiley Lease Co. take $2,104,000 from BSI.

We affirm the remainder of the trial court's judgment.  We further conclude that there is good cause to apportion costs of this appeal equally against the appellant/cross-appellee and the appellees/cross-appellants.  *See* TEX. R. APP. P. 43.4; *Dardas v. Fleming, Hovenkamp & Grayson, P.C.*, 194 S.W.3d 603, 621 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

Rebecca Simmons, Justice