The AETNA CASUALTY AND SURETY
COMPANY, Petitioner,

v.

Robert W. MARSHALL, Respondent.

No. C–4809.

Supreme Court of Texas.

Jan. 21, 1987.

Rehearing Denied March 18, 1987.

Charles W. Hurd, III and Roger Townsend, Fulbright & Jaworski, Houston, for petitioner.

Joe K. Longley and Mark L. Kincaid, Longley, & Maxwell, Austin, for respondent.

KILGARLIN, Justice.

We granted writ in this case principally to consider whether a cause of action exists against an insurance carrier under Tex.Ins. Code Ann. art. 21.21 (unfair insurance practices) when that carrier fails to comply with the terms of a worker's compensation com-

promise settlement agreement. Of additional concern at the time we granted writ was whether an insurance carrier owes a duty of good faith and fair dealing to the compensation claimant in complying with the terms of the settlement agreement.

Based on jury findings that Aetna Casualty and Surety Company had represented to Robert Marshall that their agreed judgment contained medical benefits which it did not, and that such misrepresentation was a producing cause of $30,355 actual damages to Marshall, the trial court trebled the actual damages award and rendered a $91,065 judgment for Marshall. The trial court additionally awarded Marshall attorney's fees of $19,000. The court of appeals affirmed the judgment of the trial court. 699 S.W.2d 896. We affirm the judgment of the court of appeals.

The jury had also found that Aetna's handling of Marshall's medical claims constituted a breach of its duty of good faith and fair dealing; that such breach amounted to a conscious indifference by Aetna of Marshall's rights; and, that $50,000 should be assessed against Aetna as exemplary damages. These findings did not constitute a basis for the trial court's judgment.

The facts are, briefly, that Marshall sustained an occupational injury to his back in 1976. Marshall filed his worker's compensation claim, and after an award from the Industrial Accident Board and an appeal to the district court of Brazoria County, Marshall settled his claim with Aetna for $20,000 and the payment by Aetna of all past medical expenses. Additionally, the settlement included a provision for payment by Aetna of future medical costs, as follows:

> Any future medical aid, surgery, hospital services, nursing, chiropractic service, medicines and rehabilitation benefits for the injuries made the basis of this lawsuit, provided that such medical care and treatment is incurred within five (5) years from the date of this Judgment and rendered by or at the direction of a competent physician will be paid by the defendant, Aetna Casualty & Surety Company.

As required by the Worker's Compensation Act, the settlement agreement was incorporated into a judgment, signed August 3, 1978, in which the district court of Brazoria County recited that the settlement agreement had been made known to the court, and that the court found such compromise settlement fair, just and reasonable, and approved same.

Almost immediately after the settlement, Marshall encountered difficulties with Aetna in obtaining payment for his medical expenses. Evidence shows delays in payment of medical bills by Aetna varying from four to five months, up to seventeen months, as well as an outright refusal by Aetna to reimburse for some prescribed medication. At the time of the trial of this lawsuit, medical bills totalling $355 were still unpaid. Aetna's adjuster even called one of Marshall's doctors, stating that it would not pay Marshall's current bills nor any future bills submitted by that doctor. Aetna refused to allow Marshall to attend a pain clinic recommended by one of his doctors. As a result of Aetna's conduct, doctors of Marshall's choice refused him further treatment, a hospital refused to discharge him, pharmacies refused him credit, and he was forced to borrow money from relatives to pay for medicine. Numerous phone calls and letters from Marshall's attorney to Aetna's attorney failed to improve the situation. Aetna claimed in defense that it had in its file a copy of a proposed judgment which would have given it the right to approve Marshall's medical treatment, and that it mistakenly relied on that proposed judgment rather than the one actually rendered. Marshall offered evidence showing that Aetna had been repeatedly advised of its mistake.

Rather than file suit under the provisions of the Worker's Compensation Act, Tex. Rev.Civ.Stat.Ann. art. 8307, § 5a, with its possibility of a 12% penalty provision for collection of the unpaid medical expenses, Marshall elected to sue under the Insurance Code with its provision for treble damages, alleging also a breach of a duty of good faith and fair dealing. The jury's award of $355 was for the unpaid medical expenses. The $30,000 award was for past

mental anguish. The jury awarded Marshall nothing for loss of credit standing.

Although we granted writ to consider the validity of a cause of action for the breach of the duty of good faith and fair dealing, it is unnecessary to resolve this issue in light of the judgments below. Marshall elected to take recovery based on the jury verdict so as to benefit from the treble damages provision of Tex.Ins.Code Ann. art. 21.21 (the provision for treble damages was amended in 1985), which produced a greater judgment than had Marshall elected to accept recovery for actual and punitive damages under the good faith and fair dealing violation.

■ Section 16 of article 21.21 makes actionable any violation of Tex.Bus. & Com.Code Ann. § 17.46. Marshall alleged that Aetna violated section 17.46 by representing to him that it would provide benefits by the agreement and then failing to do so. Aetna argues that Marshall cannot recover under that statute because he is not a consumer of goods or services and because a court judgment is not an insurance policy. Article 21.21 does not incorporate the entire Deceptive Trade Practices Act which would require proof that Marshall was a consumer of goods or services. Instead, article 21.21 provides a cause of action to a person who has been injured by an insurance carrier who engages in an act proscribed by section 17.46.

■ Aetna's contention that a judgment is not an insurance policy is likewise irrelevant. The question is simply whether Aetna engaged in conduct prohibited by section 17.46. The jury found that Aetna misrepresented the medical benefits that it would pay under the agreed judgment. The terms of the agreement called for Aetna to pay Marshall's medical bills incurred because of his back injury, while Aetna represented to Marshall that it had the right to pay only the bills from doctors whom they approved.

Aetna does not challenge the legal sufficiency of those findings which placed their conduct squarely within the prohibition of section 17.46(b)(5). Misrepresentations as to coverage and benefits are precisely the sort of conduct which gives rise to a section 17.46 cause of action. *Royal Globe Ins. Co. v. Bar Consultants,* 577 S.W.2d 688 (Tex.1979).

■ Aetna's next argument is that Marshall's cause of action was limited under the Worker's Compensation Act to a suit to collect the $355 unpaid medical expenses and the 12% penalty. Of course, Marshall could have sought those statutory penalties, but he is not limited to that remedy. As noted earlier, section 16 of article 21.21 provides that a person who has sustained actual damages as a result of another's deceptive acts or practices may maintain a suit for treble damages. The mere fact that Marshall was injured while working should not be used as a shield by Aetna to escape the punitive provisions of article 21.21.

■ Aetna's final argument is that Marshall was required to first submit his dispute to the Industrial Accident Board pursuant to Tex.Rev.Civ.Stat.Ann. art 8307, § 12b (Vernon Supp.1986). That statute did not become effective until August 29, 1983, four years after Marshall sued Aetna, and thus cannot be controlling.

We affirm the judgment of the court of appeals.

GONZALEZ, J., dissents.

GONZALEZ, Justice, dissenting.

My opinion dated January 21, 1987 is withdrawn, and the following is substituted.

I dissent. I cannot believe that the Legislature ever intended for court judgments (particularly a judgment in a Workers' Compensation Act case) to be the basis of a DTPA action nor an action as an unfair insurance practice. In order to avoid the machinations and contortions that would have been necessary in order to torture a judgment into a "good" or "service," the court, out of thin air, without any authority, reasoning or analysis, states that article 21.21 does not incorporate the entire DTPA. I do not agree with these conclusions.

Marshall sustained an on the job injury. This gave rise to a workers' compensation claim and an award by the Industrial Accident Board. The case was appealed to District Court where the parties entered into a settlement agreement which was incorporated into the judgment. The judgment contains an open-ended future medical provision that gave rise to this lawsuit.

Marshall alleged Aetna violated § 17.-46(b)(5) of the Bus. & Comm.Code by representing to Marshall that Aetna would provide benefits and then failing to provide those benefits. Tex.Bus. & Comm.Code Ann. § 17.46(b)(5) makes actionable: "representing that goods or services have ... benefits ... which they do not have.... The terms "goods" or "services" as used in § 17.46(b)(5) are defined in § 17.45(1) and (2) as: (1) "Goods" means tangible chattels or real property purchased or leased for use, and (2) "services" means work, labor, or service purchased or leased for use including services furnished in connection with sale or repair of goods. Clearly, an agreed judgment is not contemplated within the definition of a "good" or "service." Therefore Marshall has no basis for his claim for relief under either the DTPA or the Insurance Code.

An agreed judgment is a contract and is enforced as a contract. The fact that the judgment was entered into by consent of the parties gives it neither less nor greater force than if it had been the result of a hotly contested trial. *Wagner v. Warnasch*, 156 Tex. 334, 295 S.W.2d 890, 893 (1956). Furthermore, an allegation of mere breach of contract, without more, does not constitute a false, misleading, or deceptive act in violation of the DTPA. *Ashford Development, Inc. v. Uslife Real Estate Services Corp.*, 661 S.W.2d 933 (Tex.1983). *See also American Ins. Companies v. Reed*, 626 S.W.2d 898 (Tex.App.—Eastland 1981, no writ); *General Accident, Fire and Life Assurance Corp., Ltd. v. Legate*, 578 S.W.2d 505 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.); *Bennett v. Imperial Insurance Co.*, 606 S.W.2d 7 (Tex.Civ. App.—Dallas 1980, writ ref'd n.r.e.).

Our courts recognize that article 21.21 of the Insurance Code permits a cause of action on an insurance policy. However, there is no authority to support the bringing of a cause of action under article 21.21 to enforce the open medical provision of a compromise settlement agreement incorporated into a court judgment in a workers' compensation case.

The purpose of article 21.21, as declared in section 1, is "to regulate trade practices in the business of insurance in accordance with the intent of Congress as expressed in the Act of Congress of March 9, 1945." The Act of Congress referred to is commonly known as the McCarran-Ferguson Act. 15 U.S.C. §§ 1011–1015 (1945). The core meaning of the phrase "business of insurance" centers on the relationship between the insurer and insured, the type of policy which can be issued, and the insurance policy's interpretation. *Validity, Construction, and Application of McCarran-Ferguson Act Dealing with Regulation of Insurance Business by State or Federal Law*, 21 L.Ed.2d 938, 955–56 (1969). Moreover, federal courts have determined that the term "business of insurance" as used in the McCarran-Ferguson Act involves the underwriting or spreading of risks in a relationship between an insurer and insured. *Group Life & Health Ins. Co. v. Royal Drug Co., Inc.*, 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979).

Section 16 of article 21.21 allows a cause of action to be brought by a person injured by another's engaging in one of the following:

(1) Practices declared in section 4 of article 21.21 to be unfair or deceptive; or

(2) practices declared in the rules and regulations lawfully adopted by the State Board of Insurance pursuant to article 21.21 as being unfair and deceptive acts or practices or unfair methods of competition *in the business of insurance;* or

(3) practices defined by section 17.46 of the Business and Commerce Code as being unlawful deceptive trade practices.

*Royal Globe Ins. Co. v. Bar Consultants, Inc.,* 577 S.W.2d 688 (Tex.1979). (emphasis added).

Under section 4, the following conduct is proscribed:

(1) misrepresentation and false advertising of policy contracts; (2) false information in advertising in general; (3) defamation; (4) boycott, coercion and intimidation resulting in or tending to result in unreasonable restraint of the business of insurance; (5) false financial information; (6) issuing or delivering stock operations or advisory board contracts; (7) unfair discrimination in rates, benefits or terms of contracts; and (8) granting of rebates in certain cases. These acts and practices, declared by section 4 of article 21.21 to be unfair and deceptive, are clearly concerned with the sale and advertising of insurance.

This court has held many times that the court must construe a statute as written, and if possible, ascertain its intention from the language used without using extraneous matters as a basis for reading into the statute an intention not expressed or intended to be expressed therein. *Government Personnel Mut. Life Ins. Co. v. Wear,* 151 Tex. 454, 251 S.W.2d 525 (1952). More recently this court reiterated in *Seay v. Hall,* 677 S.W.2d 19 (Tex.1984), that courts should carefully search out a statute's intent, giving full effect to all its terms and find the intent in the language of the statute and not elsewhere.

When giving full effect to all the terms in sections 4 and 16 of article 21.21 and ascertaining the Legislature's intent from the language used therein, it is clear that this statute was never meant to be applied to enforce a judgment. Nowhere in the McCarran-Ferguson Act, the cases interpreting the Act, or in the clear and unambiguous language of article 21.21, does

there appear the slightest suggestion that it was intended to enforce an open medical provision in a judgment in a workers' compensation case.

In summary, article 21.21, section 16 was intended to protect the insurance consumer at the time of purchasing a policy. There is no allegation of any misconduct at the time the insurance policy was sold. Representations made by the insurance company after the purchase of the policy cannot constitute the basis of a DTPA claim. *See Royal Globe Ins. Co. v. Bar Consultants, Inc.,* 577 S.W.2d at 694; *Rosell v. Farmers Texas County Mut. Ins. Co.,* 642 S.W.2d 278, 279 (Tex.App.—Texarkana 1982, no writ). The Legislature could easily have made express provisions for post-sale and post-loss conduct; their failure to do so evidences an intent to not allow recovery of treble damages for such conduct.

As shown by the facts of this case, Aetna's conduct cannot be condoned. However, Marshall is not without a remedy. He can sue for breach of contract, for execution on the judgment, or bring suit under Tex.Rev.Civ.Stat.Ann. art. 8307, § 5(a).[1] Our opinion that these remedies are inadequate does not give us the right to rewrite the statute under the guise of interpreting it. I would hold that because a judgment is neither a "good" nor a "service," Marshall does not have a DTPA cause of action nor an action under article 21.21, section 16 of the Insurance Code.[2]

---

1. The court does not cite nor attempt to distinguish our holding in *Reed Tool Co. v. Copelin,* 689 S.W.2d 404, 406 (Tex.1985), where we reaffirmed the fact that the Texas Workers' Compensation Act is the exclusive remedy for work-related injuries with the exception of intentional injury. Here, there are no findings of an intentional tort. *See also Paradissis v. Royal Indemnity Company,* 507 S.W.2d 526 (Tex.1974).

2. The irony is that in the long run, the majority opinion will hurt rather than help consumers. Cases will be more difficult to settle and we may have seen the end of agreed judgments in workers' compensation cases that leave future medical open.