**Opinion filed July 24, 2025**



## In The

# Eleventh Court of Appeals

_____

## No. 11-23-00016-CV

_____

## SENTRY INSURANCE, A MUTUAL COMPANY, Appellant

## V.

## DONALD BRISTOW, Appellee

**On Appeal from the 32nd District Court**
**Nolan County, Texas**
**Trial Court Cause No. DO-92-17178**

## O P I N I O N

In 1993, Appellant, Sentry Insurance, entered into a Compromise Settlement Agreement (CSA) with Donald Bristow, a worker who had been permanently paralyzed as a result of a tragic motor vehicle accident. Pursuant to the terms of the CSA, Sentry agreed to pay Bristow $3,650 per month for home health care services, so long as Bristow was not "absent in a hospital or other health care facility."

In 2018, Sentry initiated a claim against Bristow, seeking to terminate its obligation to pay Bristow $3,650 per month, and Bristow filed counterclaims against Sentry alleging that Sentry's conduct was both in bad faith and in violation of the

Texas Insurance Code. The parties' dispute culminated in a 2022 jury trial. Following the close of evidence, the jury awarded Bristow $250,000 in mental anguish damages and $500,000 in additional damages under the Texas Insurance Code. *See* TEX. INS. CODE ANN. § 541.152(b) (West 2022).

In this appeal, Sentry complains that: (1) the trial court lacked subject-matter jurisdiction over Bristow's claims; (2) the trial court erred in rendering judgment in favor of Bristow because his claims are barred under the Texas Supreme Court's holding in *Texas Mutual Insurance Company v. Ruttiger*, 381 S.W.3d 430 (Tex. 2012); (3) the trial court erred in rendering judgment for Bristow in the absence of a finding that Sentry had engaged in an "extreme act" that led to an independent injury; (4) the trial court erred in awarding attorney's fees to Bristow arising out of his response to a motion to abate home health care payments under the CSA; and (5) the trial court erred when it failed to submit Sentry's requested question in the trial court's charge.

We affirm in part, and we reverse and render in part.

*Background Facts*

At the time of the accident in 1990, Bristow was an employee of Nunn Manufacturing Company, which carried workers' compensation insurance through Sentry. After Sentry responded to the claim, a dispute developed between the parties, and Bristow eventually brought a lawsuit against Sentry in the 32nd District Court of Nolan County. That lawsuit was settled in 1993.

Pursuant to the terms of settlement, Bristow was entitled to lifetime income payments and medical benefits pursuant to the workers' compensation statute that was in effect at the time. *See* Act of Dec. 12, 1989, 71st Leg., 2nd C.S., ch. 1, § 17.18(a), (c), 1989 Tex. Gen. Laws 1, 122. Additionally, Sentry agreed to pay Bristow $3,650 per month for ongoing home health care. The parties agreed that

2

Sentry's obligation to pay $3,650 per month would apply as long as Bristow was "at his home residence," subject to any future determinations by the trial court that Bristow was no longer in need of home health care services. Furthermore, the parties agreed that Sentry's "obligation to pay Three Thousand Six Hundred Fifty Dollars ($3,650.00) per month shall not increase or decrease."

In 2018, Sentry filed a motion to terminate home health care services, alleging that Bristow no longer needed such services. Sentry also filed a motion to abate home health care payments. Sentry asserted in the motion to abate that Bristow's actual expenses for home health care were less than the amount that it had paid to Bristow, and that Sentry was therefore entitled to abate its payments until the alleged "overpayments" had been offset by future home health care expenses. The trial court denied the motion and awarded attorney's fees to Bristow. The order required Sentry to pay $15,502.50 to Judson Francis, Jr., P.C. "for the Attorney Fees of Kenneth Stevens paid by it on behalf of [Bristow]."

Bristow also sought relief from the Texas Department of Insurance—Division of Workers' Compensation (DWC) in connection with Sentry's efforts to terminate its obligation to pay home health care benefits under the CSA. In February 2019, Bristow sent three letters to the DWC that attempted to initiate its dispute resolution procedures in connection with Sentry's declaratory judgment action. *See In re Sentry Ins. a Mut. Co.*, No. 11-20-00240-CV, 2020 WL 6554795, at *2 (Tex. App.—Eastland Nov. 6, 2020, orig. proceeding) (mem. op.) (*Sentry I*). The DWC declined to intervene, stating that "any dispute as to home health care must be submitted to the court in accordance with the terms of" the CSA. *Id.*

In 2020, Bristow asserted a counterclaim against Sentry. The counterclaim alleged that Sentry had engaged in three separate courses of conduct that had resulted in damages to Bristow. First, Bristow complained that Sentry had been paying

3

attorney's fees that were owed under the settlement agreement to Bettie Francis, the widow of his former attorney. *See id.* at *3. Bristow claimed that, because Bettie was not a licensed attorney, Sentry should not have made the payments in question. *See, e.g.*, TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 5.04(a) & cmt. 1, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (Tex. State Bar R. art. X, § 9) (prohibiting lawyers from sharing legal fees with nonlawyers and indicating that such a prohibition expresses "traditional limitations on sharing legal fees with nonlawyers"). Second, Bristow alleged that Sentry had delayed and failed to pay medical bills pertaining to treatment for ulcers that Bristow had developed as a result of his confinement to a wheelchair. Finally, Bristow alleged that Sentry had wrongfully attempted to avoid payments for home health care pursuant to the terms of the CSA.

Bristow also claimed that Sentry's actions were an act of bad faith. *See Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987). Additionally, he alleged that the same actions were in violation of the Texas Insurance Code. Sentry responded to the counterclaim by filing a plea to the jurisdiction, which alleged that the DWC had exclusive jurisdiction over Bristow's claims for unpaid medical expenses, as well as his claims relating to Sentry's attempts to avoid payments for home health care. *Sentry I*, 2020 WL 6554795, at *3.

After the trial court denied Sentry's plea to the jurisdiction, Sentry filed petitions for writ of mandamus in this court. *Id.* at *1. We determined in the mandamus proceedings that Bristow's claims fell into two distinct categories: (1) claims that were "based on Sentry's obligations under the CSA" and (2) claims "based on Sentry's alleged delay in payment of, or failure to pay, medical expenses related to ulcers suffered by Bristow." *Id.* at *5.

4

We conditionally granted the mandamus petitions with respect to Bristow's claims for unpaid medical expenses, concluding that Bristow had failed to exhaust his administrative remedies before the DWC. *Id.* at *5. However, we also concluded that Sentry had failed to show that it was entitled to mandamus relief in connection with Bristow's claims arising out of the enforcement of the monthly payments for home health care.[1] *Id.* As a result of our ruling on Sentry's request for mandamus in *Sentry I*, the trial court dismissed all of Bristow's claims arising out of Sentry's failure to pay for medical treatment. *In re Sentry Ins.*, No. 11-21-00107-CV, 2021 WL 3236308, at *3 (Tex. App.—Eastland July 30, 2021, orig. proceeding) (mem. op.) (*Sentry III*).

After we denied Sentry's request for mandamus, Sentry initiated an administrative proceeding in the DWC, again seeking a determination that it was entitled to a credit or offset in connection with its previous payments under the CSA. *Id.* The DWC subsequently issued an award, finding that Sentry was not entitled to a credit or offset on any future payments for home health care. *Id.* at *4.

In March 2021, Sentry appealed the DWC award to the 250th District Court in Randall County, where Bristow lives. *Id.* In the appeal, Sentry again alleged that it was entitled to a "credit or offset . . . due to the fact that Bristow has been grossly overpaid for home health care services beyond what he has incurred." *In re Sentry Ins. a Mut. Co.*, No. 07-21-00123-CV, 2021 WL 2448083, at *1 (Tex. App.—Amarillo June 15, 2021, orig. proceeding) (mem. op.) (*Sentry II*). However, the trial court in Randall County abated the matter in deference to the action that was already pending in Nolan County. *Id.* Sentry then filed an original proceeding in the Seventh Court of Appeals, seeking a mandamus that directed the trial court in Randall County

---

[1]The petitions were also denied with respect to Bristow's request for an accounting of the attorney's fees that had been paid pursuant to the CSA. *Id.* at *6.

5

to vacate its order abating the case. *Id.* The court of appeals denied the mandamus action, concluding that the trial court in Nolan County held dominant jurisdiction. *Id.* at *2.

In the meantime, Bristow filed an amended answer and counterclaim in Nolan County, reasserting the claims that had been dismissed by the district court as a result of our opinion in *Sentry I*. *Sentry III*, 2021 WL 3236308, at *4. Sentry then filed another petition for writ of mandamus in this court, again seeking dismissal of the claims arising out of Sentry's failure to pay medical benefits. *Id.* at *5. We granted the petition with respect to claims arising out of Sentry's alleged delay or failure to pay medical benefits, but again recognized that such claims were distinct from the claims arising out of Sentry's efforts to terminate its obligation to pay benefits under the CSA. *Id.* at *3, *8.

In April 2022, Sentry sought yet another mandamus, asking us to compel the trial court to render a motion for partial summary judgment in its favor. Sentry argued that, if the trial court did not grant summary judgment on Bristow's claims arising out of the CSA, Russell Bowman, who is Sentry's attorney, would become a material witness, requiring him to withdraw from representing Sentry prior to trial.[2] We denied the petition. *In re Sentry Ins. a Mut. Co.*, No. 11-22-00053-CV, 2022 WL 1112204, at *1 (Tex. App.—Eastland Apr. 14, 2022, orig. proceeding) (mem. op.) (*Sentry IV*).

Sentry's current appeal arises out of a jury trial that took place in April 2022. At the conclusion of the trial, the jury returned a verdict against Sentry, finding multiple, intentional violations of the Texas Insurance Code and/or the Texas

---

[2]Contrary to the sworn allegations in Sentry's petition, Bowman did not subsequently withdraw as a result of the denial of its motion for summary judgment but instead appeared for Sentry at trial and argued the case on its behalf.

Deceptive Trade Practices—Consumer Protection Act (DTPA), and awarding Bristow $250,000 in mental anguish damages, together with $500,000 in additional, statutory damages. *See* INS. § 541.152(b). The trial court then rendered judgment against Sentry for $750,000 plus attorney's fees in the amount of $75,950, which represented the attorney's fees incurred by Bristow in connection with his claims against Sentry.[3] The trial court's judgment also modified its previous order, which had required the attorney's fees in the amount of $15,502.50 to be paid to Judson Francis, Jr., P.C. in connection with Sentry's motion to abate. The judgment indicated that such fees should instead be paid directly to Bristow.

### Governing Workers' Compensation Statute

In 1989, the legislature enacted a set of sweeping amendments that "culminated in an essentially new set of Texas workers' compensation laws." *Ruttiger*, 381 S.W.3d at 439 (quoting 1 John T. Montford et al., *A Guide to Texas Workers' Comp Reform* 6–14 (1991)); *see* Act of December 12, 1989, 71st Leg., 2nd C.S., ch. 1, 1989 Tex. Gen. Laws 1. However, the new laws did not take effect until 1991. Act of December 12, 1989, 71st Leg., 2nd C.S., ch. 1, § 17.18(a), 1989 Tex. Gen. Laws 1, 122. Bristow's workplace injury occurred in 1990. As such, his claim for benefits is governed by the workers' compensation law that was in effect prior to 1991. *Sentry III*, 2021 WL 3236308, at *1 (Bristow's claim for workers' compensation benefits "was determined based on the law in effect at the time of the injury.").

### Subject-Matter Jurisdiction

In its first issue, Sentry complains that the trial court erred when it refused to dismiss Bristow's claims for lack of subject-matter jurisdiction. In resolving this

---

[3]The judgment also awarded damages to Bristow in connection with his claims against Judson Francis, Jr., P.C.

issue, we return to the distinction between Bristow's claims that we recognized in *Sentry I* and *Sentry III*. Specifically, we again note that Bristow's claims are divided into two distinct categories: (1) claims arising out of Sentry's alleged failure to pay medical benefits and (2) claims arising out of monthly payments that are due under the CSA. *See Sentry I*, 2020 WL 6554795, at \*5; *Sentry III*, 2021 WL 3236308, at \*3. Sentry complains that the trial court erred when it "refus[ed] to dismiss" claims in each of these categories in connection with its pleas to the jurisdiction.

Whether a trial court has subject-matter jurisdiction to decide a case is a question of law that we review de novo. *Harris Cnty. v. Annab*, 547 S.W.3d 609, 612 (Tex. 2018) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)); *Ector Cnty. v. Breedlove*, 168 S.W.3d 864, 865 (Tex. App.— Eastland 2004, no pet.).

A. *Failure to Pay Medical Benefits*

In *Sentry I* and *III*, we determined that the district court does not have subject matter jurisdiction over claims arising out of Sentry's alleged failure to pay medical benefits because Bristow must exhaust his administrative remedies before bringing such claims. *Sentry I*, 2020 WL 6554795, at \*5; *Sentry III*, 2021 WL 3236308, at \*7.

In its briefing, Sentry argues that "the trial court lacked jurisdiction to adjudicate any claims for damages based on delayed or denied medical benefits, and these claims cannot support the jury's award of damages." However, the trial court dismissed Bristow's claims for delayed or denied medical benefits following our decision in *Sentry III*. Additionally, in Bristow's Eighth Amended Answer and Counterclaim, which was his live pleading at trial, Bristow expressly acknowledged

8

that his claims for unpaid medical benefits had been dismissed by the trial court.[4] Bristow also argues, based on extensive citations to the record, that he never sought to introduce evidence of unpaid medical benefits during the trial, and Sentry does not dispute his briefing on this point.

The trial court dismissed the claims arising out of Sentry's alleged failure to pay medical benefits shortly after our decision in *Sentry III*, and there is no indication that unpaid medical expenses were the subject of Bristow's claims at the time of trial. Accordingly, there is no basis for us to conclude that the trial court refused to dismiss such claims, as Sentry complains.

B. *Bristow's Claims Under the CSA*

Sentry also asserts that the trial court did not have subject-matter jurisdiction to determine Bristow's claims arising out of Sentry's payments under the CSA, claiming that Bristow failed to exhaust his administrative remedies in the DWC before he brought suit on those claims. In other words, Sentry argues that Bristow's claims regarding Sentry's payments under the CSA are no different from his claims relating to unpaid medical expenses.

We have already determined that the trial court had jurisdiction over Bristow's claims arising under the CSA, including his claims that Sentry violated the DTPA and Insurance Code when it engaged in a course of conduct to avoid its obligations to pay benefits. *Sentry I*, 2020 WL 6554795, at *5; *see also Sentry III*, 2021 WL 3236308, at *3. In *Sentry I,* Sentry sought mandamus after the trial court denied its motion to dismiss for lack of jurisdiction. 2020 WL 6554795, at *1. We noted that, where an injured worker and an insurance carrier have not yet entered into a compromise settlement agreement, Article 8307, Section 5 of the former Revised

---

[4]The amended counterclaim noted that, while Bristow had not abandoned the claim, he acknowledged that it had been dismissed by the trial court pursuant to our opinion in *Sentry III*.

Civil Statutes provides broad powers to the Industrial Accident Board and its successors, including the Division of Workers' Compensation (DWC),[5] enabling such entities to determine "[a]ll questions" arising under the workers' compensation act. *Sentry I*, 2020 WL 6554795, at *5; *see* Act of May 23, 1977, 65th Leg., R.S., ch. 412, § 1, 1977 Tex. Gen. Laws 1113, 1113. We further noted that, even after the parties have entered into a compromise settlement agreement, the DWC has jurisdiction over all claims arising out of the written refusal to pay medical expenses under Article 8307, Section 12b of the former Revised Civil Statutes. *Sentry I*, 2020 WL 6554795, at *4; *see* Act of May 20, 1983, 68th Leg., R.S., ch. 501, § 1, 1983 Tex. Gen. Laws 2934, 2934. However, we indicated that Section 12b also limits the power of the IAB and its successors, stating that such entities cannot rescind or set aside any compromise settlement agreement that has been approved under the terms of the former law. *Sentry I*, 2020 WL 6554795, at *4; Act of May 20, 1983, 68th Leg., R.S., ch. 501, § 1, 1983 Tex. Gen. Laws 2934, 2935.

Section 12b does not contain a provision that corresponds to the grant of jurisdictional powers that is set out in section 5. *See* Act of May 20, 1983, 68th Leg., R.S., ch. 501, § 1, 1983 Tex. Gen. Laws 2934, 2934–95. As such, once the parties have settled their claims, the power of the IAB and its successors is limited to resolving disputes relating to the payment of medical expenses. It does not empower

---

[5]The name and identity of the administrative body that oversees workers' compensation claims has changed over time. Prior to 1989, administrative notices and disputes were submitted to the Industrial Accident Board (the IAB or the board). *See, e.g.*, Act of May 18, 1983, 68th Leg., R.S., ch. 483, §§ 1, 3, 6, 1983 Tex. Gen. Laws 2815, 2820–21 (amending reporting requirements for employers as well as the IAB's powers to consider medical disputes). When the workers' compensation laws were amended in 1989, the Industrial Accident Board was replaced by the Texas Workers' Compensation Commission (TWCC). Act of December 12, 1989, 71st Leg., 2nd C.S., ch. 1, § 2.01(a), 1989 Tex. Gen. Laws 1, 6; *see also In re Liberty Mut. Fire Ins. Co.*, No. 04-14-00254-CV, 2014 WL 3747332, at *1 n.2 (Tex. App.—San Antonio July 30, 2014, orig. proceeding) (mem. op.). Later, in 2005, the legislature abolished the Texas Workers' Compensation Commission and created the Division of Workers' Compensation within the Texas Department of Insurance. *See* Act of May 29, 2005, 79th Leg., R.S., ch. 265, § 8.001, 2005 Tex. Gen. Laws 469, 607–08; *see also Ruttiger*, 381 S.W.3d at 434 n.1.

the IAB or its successors to rescind or alter the terms of a CSA, nor does it allow such entities to interpret or construct the terms of a CSA. *Id.*

Our opinion in *Sentry I* also noted that, in response to Bristow's 2019 request for a prehearing conference relating to his claims under the CSA, the DWC had issued an opinion letter which stated that "any dispute as to home health care must be submitted to the court in accordance with the terms of" the CSA. 2020 WL 6554795, at *2. In making its decision, the DWC relied on an advisory opinion from the Texas Attorney General, which addressed the power of the IAB to exercise ongoing jurisdiction over a case after it has settled. *See* Tex. Att'y Gen. Op. No. JM-931 (1988). The 1988 opinion likewise indicates that the post-CSA authority of the IAB and its successors is limited to consideration of disputes over the payment of medical expenses. *Id.* at 5.

Based on the state of the law prior to 2019, as well as the considerations that were set out in the DWC's opinion letter, we determined in *Sentry I* that Sentry had failed to show that it was entitled to the requested relief with respect to claims that related to payments under the CSA. *Sentry I*, 2020 WL 6554795, at *5.

Sentry argues that, in *Sentry I*, we did not reach the merits of the question of the trial court's jurisdiction over Bristow's claims relating to the payments under the CSA. Our opinion in *Sentry I* did not explicitly state that the trial court had jurisdiction over the claims under the CSA. However, Sentry's mandamus action challenged the trial court's ruling on its plea to the jurisdiction. *Id.* at *3. This required us to review the pleadings and determine whether jurisdiction was lacking. *Miranda*, 133 S.W.3d at 226. Furthermore, had we determined that the pleadings were insufficient to support jurisdiction, we were obligated to either (a) remand the case to provide Bristow with an opportunity to cure any defects, or (b) dismiss the case. *Id.* at 226–27.

We did not take any action in response to the claims relating to payments under the CSA, other than denying the writ of mandamus. As such, implied within our decision was a determination that the trial court had jurisdiction over such claims. Nevertheless, to the extent that our determinations in *Sentry I* and *Sentry III* were unclear, we now explicitly hold that the trial court has properly exercised jurisdiction over Bristow's claims arising under the CSA.

We overrule Sentry's first issue.

### *Effect of Ruttiger*

In its second issue, Sentry argues that the trial court erred in denying its motion for directed verdict and motion for judgment notwithstanding the verdict because Bristow's claims are barred under the Texas Supreme Court's opinion in *Ruttiger*.

A motion for judgment disregarding the verdict should be granted when "(1) one party is entitled to recover as a matter of law because the evidence is conclusive, or (2) a legal principle precludes recovery." *Byun v. Hong*, 641 S.W.3d 821, 826 (Tex. App.—Tyler 2022, no pet.); *see also Hunter v. PriceKubecka, PLLC*, 339 S.W.3d 795, 806 (Tex. App.—Dallas 2011, no pet.); *John Masek Corp. v. Davis*, 848 S.W.2d 170, 173 (Tex. App.—Houston [1st Dist.] 1992, writ denied). Likewise, a motion for directed verdict will be sustained when "a defect in a pleading renders it insufficient to support a judgment." *Long v. Ahlgren*, No. 11-11-00279-CV, 2013 WL 5890906, at *4 (Tex. App.—Eastland Oct. 31, 2013, no pet.) (mem. op.).

In its charge, the trial court submitted three questions in connection with Bristow's liability claims.

First, the charge inquired as to whether Sentry had engaged in an unconscionable action or course of action that was a producing cause of Bristow's alleged damages, in violation of the DTPA. TEX. BUS. & COMM. CODE ANN.

12

§ 17.50(a)(3) (West 2021). Under the DTPA, an unconscionable action or course of action is any "act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." *Id.* § 17.45(5).

Second, the charge inquired as to whether Sentry had engaged in an unfair or deceptive act or practice that caused damages to Bristow, in violation of the Texas Insurance Code. INS. § 541.151. Under Section 541.151 of the Insurance Code, a person who sustains damages may bring an action against anyone who engages in an "unfair or deceptive act or practice in the business of insurance," as defined by the Insurance Code. *Id.* Section 541.060, in turn, enumerates several categories of "unfair settlement practices" that fall within the category of "unfair or deceptive act[s] or practice[s] in the business of insurance." *Id.* § 541.060(a). The charge listed several unfair settlement practices, including the following:

- "Misrepresenting to a claimant a material fact or policy provision relating to the 1993 Compromise Settlement Agreement." *See id.* § 541.060(a)(1).

- "Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim when the insurer's liability has become reasonabl[y] clear." *See id.* § 541.060(a)(2)(A).

- "Failing to attempt in good faith to effectuate a prompt, fair, and equitable payment of a claim under the Compromise Settlement Agreement, for which the insurer's liability has become reasonably clear." *See id.*

- "Failing to provide promptly to Donald Bristow a reasonable explanation of the factual and legal basis in the Compromise Settlement Agreement for an insurer's denial of the claim." *See id.* § 541.060(a)(3).

Finally, the charge inquired as to whether Sentry had failed to comply with its duty of good faith and fair dealing to Bristow. *See Arnold*, 725 S.W.2d at 167.

*History Prior to Ruttiger*

In Texas, the duty of good faith and fair dealing originates in *Arnold*. *Id.* In *Arnold*, an uninsured motorist carrier refused to negotiate a settlement with its insured, who had been injured in a motorcycle accident. *Id.* at 166. The insured's evidence indicated that, in refusing to negotiate the claim, the insurance company was relying on weak or nonexistent defenses. *Id.* at 166–67. The supreme court held that Texas insurers owe a duty to deal fairly and in good faith with their insureds because a special relationship exists between the parties. *Id.* at 167. Specifically, it held that the unequal bargaining power and the nature of insurance contracts might otherwise "allow unscrupulous insurers to take advantage of their insureds' misfortunes in bargaining for settlement or resolution of claims." *Id.* As a general matter, an insurer's obligation of good faith and fair dealing to its insured is still recognized by our supreme court. *See, e.g.*, *Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 148 (Tex. 2022).

In the context of workers' compensation insurance, the duty of good faith and fair dealing arises out of the supreme court's opinion in *Aranda v. Insurance Company of North America*, 748 S.W.2d 210, 212–13 (Tex. 1988). In *Aranda*, the court recognized that the workers' compensation scheme creates a three-party agreement. *Id.* at 212; *see also S. Cas. Co. v. Morgan*, 12 S.W.2d 200, 201 (Tex. Comm'n App. 1929, judgm't adopted). Pursuant to this arrangement, the carrier agrees to compensate the employee for injuries sustained in the course and scope of employment, while the employee agrees to relinquish his common law rights against the employer. *Aranda*, 748 S.W.2d at 212. The employee, therefore, is "a party to the contract and entitled to recover in that capacity." *Id.* The court indicated that the contract between the carrier and the employee "creates the same type of special relationship that arises under other insurance contracts." *Id.* Thus, it recognized

14

that, at the time, there was "a duty on the part of workers' compensation carriers to deal fairly and in good faith with injured employees in the processing of compensation claims." *Id.*

Likewise, prior to *Ruttiger*, an injured employee was able to assert claims against a workers' compensation carrier for violations of the Texas Insurance Code, as well as the DTPA, including claims arising out of the carrier's obligations under the parties' settlement agreement. In *Aetna Casualty & Surety Company v. Marshall*, 724 S.W.2d 770 (Tex. 1987), for example, a carrier refused to pay the medical providers for an injured employee following the settlement of a claim through which it became obligated to pay ongoing medical expenses. *Id.* at 771. The record indicated that the carrier had called the injured employee's doctor and indicated that it was not going to pay any of the workers' unpaid bills, nor any future bills. *Id.* It had also refused to approve treatment from a pain specialist that had been recommended by one of the injured employee's doctors. *Id.*

The carrier claimed that, at the time, it had mistakenly believed that it had a right to approve all medical treatment under the terms of an agreed judgment that was rendered in connection with the parties' settlement. *Id.* However, the agreed judgment did not contain such a provision, and the carrier had repeatedly been advised about its mistake. *Id.* As a result of the carrier's failure to pay benefits, the injured employee was refused treatment by his doctors, and his pharmacies refused to extend him credit. *Id.* To pay for his medications, he was forced to borrow money from relatives. *Id.*

The injured employee sued the carrier for breach of the duty of good faith and fair dealing. *Id.* Additionally, he asserted a claim under the former Article 21.21 of

the Texas Insurance Code.[6]  *Id.* at 772.  Specifically, he alleged that the carrier had misrepresented that it would pay his medical benefits in connection with the parties' settlement, in violation of the terms of former Article 21.21.  *Id.* at 772.

The insurance carrier contended that recovery under former Article 21.21 was improper because the judgment, which had approved the compromise settlement agreement, was "not an insurance policy," but the supreme court rejected this argument, and held that the carrier's misrepresentation of the terms of settlement was actionable.  *Id.*  The court further held that, as a result of the carrier's misrepresentations, the employee was entitled to recover additional statutory damages.  *Id.*

*The Holding in Ruttiger*

In *Ruttiger*, the supreme court addressed the question of whether causes of action for unfair settlement practices under Section 541.060 and breach of the duty of good faith and fair dealing are available to injured workers whose claims are governed by the 1989 amendments to the Texas workers' compensation laws.  381 S.W.3d at 438–56.  In both instances, the court determined that these causes of action are no longer available.  *Id.*

The court provided two justifications in support of its determination that a cause of action for unfair settlement practices under Section 541.060 was unavailable to Ruttiger.  First, the court determined that Section 541.060 does not apply to claims that are brought under the amended act.  *Id.* at 444.  The court noted that, unlike the pre-1989 law, the amended act "prescribes detailed, [DWC]-supervised, time-compressed processes for carriers to handle claims and for dispute resolution" and that it contains "multiple, sometimes redundant but sometimes

---

[6]The contents of former Article 21.21 have since been recodified in Chapter 541.  *See* Act of May 20, 2003, 78th Leg., R.S. ch. 1274, §§ 2, 26(a)(1), 27, 2003 Tex. Gen. Laws 3611, 3658–75, 4138–39.

additive, penalty and sanction provisions for enforcing compliance." *Id.* at 443. The court concluded that the legislature had intended for there to be no alternative remedies outside of the expansive regulatory scheme that was contained in the 1989 amendments, and that a claim for unfair settlement practices was therefore no longer available. *Id.* at 444; *see also City of Waco v. Lopez*, 259 S.W.3d 147, 155–56 (Tex. 2008) ("It is conceptually untenable that the Legislature would have erected two alternative state statutory remedies, one that enacts a structured scheme favoring investigation and conciliation and carefully constructs rights, remedies, and procedures under that scheme . . . and one that would significantly undermine that scheme.").

Additionally, the court determined that the prohibition of "unfair settlement practices" under Section 541.060 did not apply to the claims of Ruttiger, the injured worker, because the new law prohibits the settlement of pending claims before an injured worker reaches maximum medical improvement and returns to work. *Ruttiger*, 381 S.W.3d at 444. The court indicated that, because Ruttiger had not yet reached maximum medical improvement, and had not yet returned to work, Ruttiger's claim "could not yet have been settled." *Id.*

With respect to the cause of action for good faith and fair dealing, the court determined that *Aranda* was likewise inapplicable to Ruttiger. *Id.* at 446. The court's opinion was again based on the procedural protections provided under the amended law. The court noted that, while the pre-1989 law provided for a pre-hearing conference before the IAB, the conference "was not designed to be an actual hearing," but primarily served as a vehicle that allowed the pre-hearing officer to make a recommendation for an award. *Id.* at 447. Furthermore, once the award was issued, either party "could appeal the award to the district court for a trial de novo." *Id.* at 447–48 (citing *Latham v. Sec. Ins. Co.*, 491 S.W.2d 100, 103–04 (Tex. 1972)).

17

The court indicated that, following an appeal "the carrier could stop providing benefits" and that—if compensability was contested—"it could continue to refuse to provide benefits even if the IAB award was in favor of the employee." *Id.* at 448. Additionally, there was no effective procedure for resolving disputes over medical care. *Id.*

The court concluded that, under the prior law, "[t]he lack of an immediate, binding dispute resolution process . . . resulted in carriers, for the most part, having control over claims resolution." *Id.* Such control "yielded greatly disparate bargaining positions between insurers and injured workers" while "the IAB was considered to have relatively little power to control the process." *Id.*

By contrast, the court noted that the new act requires the DWC to conduct a benefit review conference within forty days after it is requested, and a contested case hearing within sixty days thereafter. *Id.* at 449; *see also* 28 TEX. ADMIN. CODE § 141.1(h) (2025) (Tex. Dep't of Ins., Div. of Workers' Comp., Requesting and Setting a Benefit Review Conference); TEX. LAB. CODE ANN. § 410.025(b) (West 2015). The hearing officer's decision is immediately binding, and it can then be appealed to a panel at the DWC, which must issue a written decision within forty-five days. *Ruttiger*, 381 S.W.3d at 442; LAB. § 410.169, 410.204(a) (West Supp. 2024). During this process, "the carrier is not in exclusive control" since the DWC "has the authority to issue interlocutory benefit-payment orders that are binding as to past as well as future benefits." *Ruttiger*, 381 S.W.3d at 449 (citing LAB. §§ 410.032, 410.168(c), 413.055). The court noted that the legislature had also addressed the disparity of bargaining power between the parties by creating an Office of Injured Employee Counsel, which assists injured employees through an ombudsman program that gives the employees trained assistance when they are not represented by counsel. *Id.* (citing LAB. 404.101).

As a result of these and other protections that were provided under the amended law, the Texas Supreme Court concluded that the new act "effectively eliminates the need for a judicially imposed cause of action outside the administrative processes and other remedies" provided by the new law. *Id.* at 451; *see also Carpenter v. Sw. Med. Examination Services, Inc.*, 381 S.W.3d 583, 588 (Tex. App.—Eastland 2012, no pet.) (refusing to apply *Arnold* to a claim arising out of a post-amendment injury based on the *Ruttiger* court's conclusion that "the Legislature has substantially remedied the deficiencies that led to . . . *Arnold*"). However, the holding in *Ruttiger* did not otherwise overrule *Arnold* or other related cases recognizing a claim for breach of an insurer's duty of good faith and fair dealing, and the cause of action has since remained viable in other contexts. *See, e.g.*, *Elephant Ins.*, 644 S.W.3d at 149 (recognizing the ongoing applicability of the duty of good faith and fair dealing).

*Post-Ruttiger*

The Texas Supreme Court revisited its holding in *Ruttiger* several months later. In *In re Crawford & Company*, a workers' compensation claimant asserted a DTPA claim, together with a wide array of additional causes of action against a carrier based on the manner in which the carrier had handled his claim arising out of a post-amendment, 1998 injury. 458 S.W.3d 920, 921–22 (Tex. 2015) (orig. proceeding). The court determined that because all of the claimant's causes of action arose out of the "investigation, handling, and settling" of the claim at issue,[7] the new workers' compensation act provided the "exclusive procedures and remedies" for the workers' claims. *Id.* at 926.

---

[7]*Ruttiger* and *In re Crawford* apply to causes of action arising out of the claims process. *Ruttiger*, 381 S.W.3d at 445–46; *In re Crawford*, 458 S.W.3d at 927.

Sentry asserts that the supreme court's opinion in *Ruttiger* operates to bar all of the claims that have been asserted by Bristow. In support of this contention, Sentry cites to *In re Illinois Employers Ins. of Wausau*, 497 S.W.3d 93 (Tex. App.—Houston [14th Dist.] 2016, orig. proceeding) (*Wausau II*). In that case, Wood Jones brought suit against Wausau in connection with a 1978 work injury arising out of an infection. *Id.* at 94. Following the injury, Jones was diagnosed with bacterial endocarditis and underwent surgery to replace his aortic valve. *Id.* In 1979, the IAB determined that the heart infection was a part of the compensable injury, and Wausau did not appeal the IAB's order. *Id.* However, between 1997 and 2001, Wausau continued to contest medical expenses relating to the heart condition. *Id.* at 94–95. After multiple awards of medical expenses were appealed to the district court, the Sixth Court of Appeals held that the IAB's 1979 order was final, and that it was binding and unappealable. *Jones v. Illinois Employers Ins. of Wausau*, 136 S.W.3d 728, 738 (Tex. App.—Texarkana 2004, no pet.) (*Wausau I*).

Several years later, Jones filed an amended counterclaim against Wausau, alleging claims of bad faith and violations of the Texas Insurance Code arising out of Wausau's alleged failure to pay ongoing medical expenses relating to his heart condition. *Wausau II*, 497 S.W.3d at 95. Wausau responded by arguing that Jones's claims were barred under *Ruttiger*. *Id.*

The Fourteenth Court of Appeals held that, because Wausau's alleged bad faith conduct occurred after *Ruttiger* was decided, his common law and statutory bad faith claims were no longer available even though his injury occurred prior to the amendments to the Texas workers' compensation laws. *Id.* at 98 (citing *Crawford*, 458 S.W.3d at 923–24). In doing so, the Fourteenth Court of Appeals rejected Jones's contention that *Ruttiger* had no retroactive application to his claims for common law bad faith and violations of the Insurance Code. *Id.* at 95, 97–98.

20

In his briefing, Bristow concedes that his position is contrary to the holding in *Wausau II*. Instead, he urges that *Wausau II* was wrongly decided. Bristow asserts that the decision in *Ruttiger* was limited to claims that are asserted under the amended workers' compensation law.

After careful consideration of *Wausau II*, as well as *Ruttiger* and its progeny, we conclude that *Ruttiger* precludes Bristow's statutory and bad faith claims. In this regard, it is the date of the alleged misconduct, not the date of the alleged injury, that dictates the applicability of *Ruttiger*. *Id.* at 98 ("Because [the claims at issue] are predicated on Wausau's 2015 conduct, [the claimant] cannot maintain his common law and statutory claims."). As such, we conclude that the holding in *Ruttiger* applies to preclude Bristow's bad faith claims.[8]

We sustain Sentry's second issue. Because we have determined that the trial court improperly submitted the question of Sentry's bad faith liability to the jury, we need not address Sentry's third and fifth issues, which complain that the trial court's award of mental anguish damages was improper and that the trial court erred in failing to submit Sentry's requested questions. *See* TEX. R. APP. P. 47.1 (The court of appeals must issue an opinion that addresses every issue raised that is "necessary to final disposition of the appeal.").

*Attorney's Fees*

In its fourth issue, Sentry maintains that the trial court erred when it ordered Sentry to pay attorney's fees to Bristow in connection with its motion to abate home

---

[8]*Ruttiger* permits a cause of action under the Insurance Code arising out of the misrepresentation of the contents of a policy. 381 S.W.3d at 445–46. In this case, the jury's response to Question 2 included elements relating to misrepresentation of the policy and/or CSA. However, Bristow's pleadings and evidence were not based on claims that Sentry had misrepresented its policy, nor does Bristow argue on appeal that the finding in Question 2 is appropriate on that basis. Nevertheless, we hold that the jury's finding in Question 2 was unsupported by the evidence to the extent that it was based on a determination that Sentry had misrepresented the policy.

21

health care payments under the CSA. Sentry argues that, even though Bristow prevailed in connection with its motion to abate the home health care payments, attorney's fees are not available to Bristow in connection with his response to that motion.

The issue of whether attorney's fees are available is a question of law that we review de novo. *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999) ("The availability of attorney's fees under a particular statute is a question of law for the court."); *Jones v. Patterson*, No. 11-17-00112-CV, 2019 WL 2051301, at *8 (Tex. App.—Eastland May 9, 2019, no pet.) (mem. op.). "In Texas, a party may not recover attorney's fees unless authorized by contract or statute." *Tuttle v. Builes*, 572 S.W.3d 344, 359 (Tex. App.—Eastland 2019, no pet.) (citing *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 172 (Tex. 2013)).

In the trial court, Bristow maintained that he was entitled to attorney's fees because the "controversy . . . involved a . . . Compromise Settlement Agreement" and because he had "pled for and requested attorney fees under the Texas Civil Practice [and] Remedies Code [Section] 38.001."[9]

Section 38.001 provides that "[a] person may recover reasonable attorney's fees from an individual or organization . . . in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract." Tex. Civ. Prac. & Rem. Code Ann. § 38.001(b)(8) (West Supp. 2024). To recover damages under Section 38.001(b)(8), a party must have a "valid claim" for a "contract." *Id.* Thus, parties that prevail *against* a claim for breach of contract are not entitled to attorney's fees. *See Prosper Florida, Inc. v. Spicy World of USA, Inc.*, 649 S.W.3d 661, 680

---

[9]In the trial court, Bristow also argued that he was entitled to attorney's fees because he had pleaded for a declaratory judgment in his response to Sentry's request for declaratory relief. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2020) (In proceeding under the Uniform Declaratory Judgment Act, "the [trial] court may award costs and reasonable and necessary attorney's fees as are equitable and just."). However, he does not make this argument on appeal.

(Tex. App.—Houston [1st Dist.] 2022, no pet.) ("[A] party who defeats a contract claim" is not entitled to recover attorney's fees under Section 38.001.); *N. Star Water Logic, LLC v. Ecolotron, Inc.*, 486 S.W.3d 102, 107 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("Chapter 38 does not provide for recovery of attorneys' fees by defendants who only defend against a plaintiff's contract claim and do not present their own contract claim.") (quoting *Polansky v. Berenji*, 393 S.W.3d 362, 368 (Tex. App.—Austin 2012, no pet.)).

In this instance, Sentry sought (and failed to obtain) relief under a written contract. While Bristow defeated Sentry's claim, Bristow did not successfully prosecute his own claim for breach of contract. Accordingly, Bristow was not entitled to recover attorneys' fees in connection with Sentry's motion to abate.

We sustain Sentry's fourth issue.

### This Court's Ruling

We reverse the trial court's award of damages and attorney's fees to Bristow in connection with his causes of action for violation of the DTPA, violation of the Texas Insurance Code, and breach of the duty of good faith and fair dealing. In the place of this award, we render judgment that Bristow take nothing in connection with the same claims. We likewise reverse the trial court's award of attorney's fees to Bristow arising out of Sentry's motion to abate and render judgment that Bristow take nothing in connection with that claim. Otherwise, we affirm the judgment of the trial court.

JOHN M. BAILEY

July 24, 2025                    CHIEF JUSTICE

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

23